Hernando WILLIAMS, Petitioner–Appellant,

v.

James CHRANS and Neil F. Hartigan, Respondents–Appellees.

No. 95–1140.

United States Court of Appeals, Seventh Circuit.

Feb. 24, 1995.*

---

**1.** We also must reject the suggestion that our opinion in *Williams II* invited the submission now tendered by Mr. Williams.

\* This opinion was originally released in typescript form.

Barry Levenstam (submitted), Michael T. Brody, Jerold S. Solovy, Jenner & Block, Chicago, IL, Sheldon Nagelberg, Chicago, IL, for petitioner-appellant.

Arleen C. Anderson, Asst. Atty. Gen., Chicago, IL, for respondents-appellees.

Before CUDAHY, RIPPLE, and MANION, Circuit Judges.

PER CURIAM.

This is a death case. It is before the court on the motion of Hernando Williams for a stay of execution. At the time that this motion was filed, Mr. Williams had pending before the court a petition for rehearing and suggestion for rehearing en banc. The petition for rehearing was denied on February 22, 1995. The court also noted on that date that no judge in active service had requested a vote on the suggestion for rehearing en banc. This motion is not moot, however, because Mr. Williams has also asked that we grant a stay of execution pending his petition to the Supreme Court of the United States for a writ of certiorari. In the following discussion, we shall assume familiarity with our earlier decisions in this matter as well as with the decisions of the Illinois courts.[1]

---

1. This court's previous decisions are *Williams v. Chrans*, 945 F.2d 926 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3002, 120 L.Ed.2d 877 (1992) (*Williams I*); *Williams v. Chrans*, 42 F.3d 1137 (7th Cir.1994) (*Williams II*); *Williams v. Chrans*, 50 F.3d 1356 (7th Cir.1995). The opinion of the Supreme Court of Illinois is *People v. Williams*, 97 Ill.2d 252, 73 Ill.Dec. 360, 454 N.E.2d 220 (1983), *cert. denied,* 466 U.S. 981, 104 S.Ct. 2364, 80 L.Ed.2d 836 (1984).

■ The general standards for granting a stay pending a petition to the Supreme Court are set forth in Rule 41(b) of the Federal Rules of Appellate Procedure and in our Circuit Rule 41(a)(3). The granting of a stay is a form of temporary injunction and, in general, is governed by the same principles, modified to some extent because there have already been proceedings in the lower courts and the party making the application has not prevailed in the court of appeals. Therefore, the inquiry must center on whether the applicant will suffer irreparable injury and whether the applicant has a reasonable probability of succeeding on the merits in the higher court. *See United States v. Holland,* 1 F.3d 454, 456 (7th Cir.1993) (Ripple, J., in chambers). In the context of a petition for a writ of certiorari, the second inquiry must focus on whether there is a probability that four Justices will vote to grant a writ of certiorari and a reasonable possibility that five Justices will vote to reverse the judgment of this court. *Id.* Various Justices of the Supreme Court of the United States have articulated this standard in formulations that, although varying stylistically, reveal no real deviation in substance. *Id.* (collecting cases).

■ The law governing stays of death sentences is, in general, the same as that employed in other situations. The inquiry with respect to irreparable injury is, however, different. There can be no doubt that a defendant facing the death penalty at the hands of the state faces irreparable injury. *See Wainwright v. Booker,* 473 U.S. 935, 935 n. 1, 106 S.Ct. 3343, 3343 n. 1, 87 L.Ed.2d 706 (1985) (Powell, J., concurring). Nevertheless, as Justice White, writing for the Court in *Barefoot v. Estelle,* 463 U.S. 880, 895, 103 S.Ct. 3383, 3395, 77 L.Ed.2d 1090 (1983), made clear, "[s]tays of execution are not automatic pending the filing and consideration of a petition for a writ of certiorari." It is necessary that the applicant establish that there is a reasonable probability that four members of the Court will vote to grant certiorari and that five members of the Court will vote to reverse the judgment of the Court of Appeals. *Id.* In a second or successive habeas appeal, we must be especially circumspect in assessing the merits of the applicant's case. We must determine that there are "substantial grounds" upon which relief may be granted. *Delo v. Stokes,* 495 U.S. 320, 321, 110 S.Ct. 1880, 1881, 109 L.Ed.2d 325 (1990). *Accord Delo v. Blair,* — U.S. ——, ——, 113 S.Ct. 2922, 2923, 125 L.Ed.2d 751 (1993); *Barefoot,* 463 U.S. at 895, 103 S.Ct. at 3395. With these standards in mind, we now turn to the case before us.

We turn first to the factor of irreparable injury. As Justice Powell noted in *Booker,* the issue of irreparable injury is taken as established in a capital case. Here, the Illinois Supreme Court has set an execution date of March 22, 1995. The State's suggestion that its preparations for the execution, including the charges for month-long rental of telephone lines, somehow dilute that potential harm is frivolous and unworthy of further comment. This court is well aware of its responsibilities not to interfere unduly with the sovereign power of the state to enforce criminal laws that pass constitutional muster. It is also aware of its own right and responsibility to conduct its judicial work in a manner that reflects the seriousness of inflicting the death penalty upon a human being. Human life is not measured in the costs of telephone lines.

■ The inquiry of probability of success on the merits requires, as we have noted earlier, that we assess the probability that four Justices of the Supreme Court would grant a petition for a writ of certiorari and the possibility that five Justices might reverse our judgment. This inquiry requires that we dispassionately assess the merits of the case in light of the available evidence and determine, as best we can, how the Justices will assess the judgment that we have rendered. *See* Robert L. Stern et al., *Supreme Court Practice* § 17.12 at 675 (7th ed. 1993). In this regard, our task is somewhat akin to that of the individual Circuit Justice; we must rule not according to our own view of the merits but according to how we believe the Supreme Court will deal with the case. *See Board of Educ. v. Superior Court,* 448 U.S. 1343, 1347, 101 S.Ct. 21, 23, 65 L.Ed.2d 1166 (1980) (Rehnquist, J., in chambers) (noting that an individual Justice ought not determine his own vote on the merits, but how

the Court would vote); *Rostker v. Goldberg,* 448 U.S. 1306, 1308, 101 S.Ct. 1, 2, 65 L.Ed.2d 1098 (1980) (Brennan, J., in chambers) (same). In reaching this determination, we must assess the issues that the applicant plans to include in the petition for certiorari in light of the earlier history of the case, the Supreme Court's treatment of other cases presenting the same or analogous issues, and the general considerations that guide the Supreme Court in determining whether to issue a writ of certiorari to a court of appeals.

Mr. Williams states that his petition for a writ of certiorari will raise two issues. First, he will ask that the Justices review the law of this circuit with respect to the application of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), to his contentions about the jury instructions at sentencing. This panel believed that it was bound by the earlier decisions of this court in *Free v. Peters,* 12 F.3d 700 (7th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 433, 130 L.Ed.2d 345 (1994) and *Gacy v. Welborn,* 994 F.2d 305 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 269, 126 L.Ed.2d 220 (1993). Our colleagues have left our judgment undisturbed in considering the suggestion for rehearing en banc. We also must acknowledge that cases with the same issue have survived not only the scrutiny of this court, but also further scrutiny on petition for writ of certiorari in the Supreme Court of the United States. We are well aware that the denial of certiorari does not indicate disapproval or even lack of interest in the issue by the Supreme Court. *See United States v. Carver,* 260 U.S. 482, 490, 43 S.Ct. 181, 182, 67 L.Ed. 361 (1923) (noting that denial of the writ "imports no expression of opinion upon the merits of the case, as the bar has been told many times"). On the other hand, the declination of the circuit judges to revisit the matter and the denial of certiorari in other cases that contained the same issue certainly are not evidence of the *probability* that the Justices will decide to hear this case. Nor do we believe that Mr. Williams has demonstrated that any of the criteria traditionally employed by the Supreme Court in deciding to grant the writ are met here. *See* Sup. Ct.R. 10.1(a), (c). *Williams v. Dixon,* 961 F.2d 448 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992), noted by Mr. Williams in his petition for rehearing, raises no square conflict.

The second issue that Mr. Williams intends to present to the Supreme Court is that the course of judicial proceedings leading up to his scheduled execution has been arbitrary and capricious in violation of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). To the extent that this issue raises matters that previously have been decided by this court, we respectfully invite the attention of the Justices to our earlier opinions, especially *Williams I.* In those opinions, we have set forth at significant length our adjudication of each of Mr. Williams' submissions. It is not appropriate for this court to revisit those issues today. Those issues presented in *Williams I,* including the claim for relief under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), have already been reviewed by the Supreme Court on certiorari. To the extent that Mr. Williams believes that the Supreme Court's precedent has treated him unfairly, the matter must, of course, be assessed by the Justices, not by us.

We are unable to conclude, from our vantage point as circuit judges, that Mr. Williams has established probability of success on the merits. Accordingly, under the standards that govern our adjudication of such a motion, we must deny the relief requested. The motion for a stay of execution must be denied.

Stay of Execution Denied.