RIPPLE, Circuit Judge.
Jason Senne’s vehicle was parked overnight on a public way in the Village of Palatine, Illinois (the “Village”), where such parking was prohibited by ordinance. Village authorities placed a parking citation on his windshield. Various pieces of personal information, obtained by the Village from a database originating with the Illinois Department of Motor Vehicles, were printed on the citation. Mr. Senne subsequently brought this action on behalf of himself and a class of others similarly situated against the Village.[1] He claimed that the Village’s practice of printing personal information obtained from motor vehicle records on parking tickets was a violation of the Driver’s Privacy Protection Act (the “Act” or the “DPPA”), 18 U.S.C. §§ 2721-25. Under the DPPA, state departments of motor vehicles (“DMVs”) are restricted in their ability to disclose certain personal information contained in motor vehicle records; authorized recipients are further restricted in redisclosing information obtained from those records. See id. § 2721. Injured persons are provided with a private right of action. See id. § 2724.
The Village moved to dismiss Mr. Senne’s claim for failure to state a claim upon which relief can be granted. See Fed. R.Civ.P. 12(b)(6). It contended that issuing a parking citation was not a disclosure under the statute and that, even if it were, it fell within a specifically permitted purpose identified in the statute. The district court agreed and granted the Village’s motion. A panel of this court affirmed, Senne v. Vill. of Palatine, Illinois, 645 F.3d 919 (7th Cir.2011), and the full court granted rehearing en banc.[2] Mr. Senne’s appeal requires that we examine the scope of the DPPA’s protection of personal information contained in motor vehicle records and the reach of its statutory exceptions. We now conclude that the parking ticket at issue here did constitute a disclosure regulated by the DPPA, and we further agree with Mr. Senne that, at this stage of the litigation, the facts as alleged are sufficient to state a claim that the disclosure on his parking ticket exceeded that permitted by the statute. Accordingly, we reverse the judgment of the district court and remand *600 for further proceedings consistent with this opinion.
I
BACKGROUND
A. Facts
Mr. Senne’s complaint, which we must accept for present purposes as true,[3] alleges that, on August 20, 2010, his vehicle was parked on a public way in violation of the Village’s overnight parking ban. At 1:35 a.m., a Palatine police officer placed a parking citation under a windshield wiper blade of the vehicle. The citation remained on the windshield, in public view on a public way, until Mr. Senne retrieved it some five hours later.
The ticket had been printed electronically on a pre-existing form. The printed information included a date and time stamp, the officer’s name and badge number and the parking offense, which was the basis for the citation. It also included various information about the vehicle, including the make, model, color, year, license number and vehicle identification number (“VIN”). In addition, and most relevant to the present case, the citation included personal data about Mr. Senne, whom motor vehicle records showed to be the owner of the illegally parked vehicle. Specifically, the citation included his full name, address, driver’s license number, date of birth, sex,, height and weight.
The citation doubled as an envelope to remit payment of the fine, which, if used as intended, would have displayed the printed personal information on its exterior when mailed. It instructed Mr. Senne that he could either pay the $20 fine in person, mail a check or money order using the ticket as an envelope or request a hearing to contest the citation.
B. District Court Proceedings
After receiving the citation, Mr. Senne brought this action in the district court. He alleged that the parking ticket amounted to a disclosure of protected personal information by the Village in violation of the DPP A. His complaint requested, for himself and a putative class, statutory liquidated damages and injunctive relief. He also requested limited, expedited discovery relating to the total number of parking citations issued by the Village in the relevant period. Shortly thereafter, he moved for a temporary restraining order and preliminary injunction prohibiting the Village from printing any personal information, as defined by the DPPA, on its parking citations.
In response,' the Village filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). It contended that the parking ticket was a permitted disclosure under three separate categories in the statute: It was a disclosure (1) “[f]or use by a[ ] government agency, including a[ ] ... law enforcement agency, in carrying out its functions,” as permitted by § 2721(b)(1); (2) “[f]or use in connection with matters of motor vehicle or driver safety,” as permitted by § 2721(b)(2); and (3) “[f]or use in connection with any eivil[ ] ... [or] administrative[ ] ... proceeding ..., including the service of process,” as permitted by § 2721(b)(4). The Village later clarified that it did not concede that any disclosure had occurred, other than to the plaintiff, who was the subject of the record.
In a brief oral ruling, the district court agreed with the Village and dismissed the case. The court specifically held that the parking ticket did not fall within the ambit of the statute because its issuance did not *601 constitute a disclosure. In the district court’s view, “what the statute is talking about is what people would commonly call a disclosure, which is turning something over to somebody else.”[4] Although the court found this basis sufficient and concluded that reaching the statutory exceptions was unnecessary, it also held that § 2721(b)(1), relating to a law enforcement agency carrying out its functions, would exempt any disclosure made through the parking citation. Mr. Senne timely appealed.
II
DISCUSSION
We review de novo the district court’s entry of judgment on a motion to dismiss for failure to state a claim.[5] We must construe the complaint in the light most favorable to the plaintiff and must draw all reasonable inferences in his favor.[6] Taking the facts of the complaint as true, the Village contends that the DPPA provides no basis for relief.[7]
The Village contends that the district court’s judgment ought to be affirmed for two reasons. First, it submits that the printing of Mr. Senne’s personal information on the citation and the placement of that citation on his windshield did not constitute a disclosure under the Act. Second, it submits that, in any event, the action specifically was permitted by the exceptions to the general limitation on disclosure in the statute. We shall address each argument in turn.
A. Whether the Ticket is a Disclosure Regulated by the DPPA
“As in any case of statutory construction, our analysis begins with the language of the statute.” Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (internal quotation marks omitted). Specifically, we begin by looking broadly at the structure of the statute to acquire an understanding of the activity that it regulates. “Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute[ ]....” Dolan v. United States Postal Serv., 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006).
Section 2721 contains the substantive prohibitions and relevant exceptions that principally concern us. It begins with a general restriction on the release of information by a state DMV:
(a) In general. — A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:
(1) personal information, as defined in 18 U.S.C. 2725(3),[8] about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b) of this section; or *602 (2) highly restricted personal information, as defined in 18 U.S.C. 2725(4),[9] about any individual obtained by the department in connection with a motor vehicle record, without the express consent of the person to whom such information applies, except uses permitted in subsections (b)(1), (b)(4), (b)(6), and (b)(9): Provided, That subsection (a)(2) shall not in any way affect the use of organ donation information on an individual’s driver’s license or affect the administration of organ donation initiatives in the States.
18 U.S.C. § 2721(a). Subsection (b) defines various exceptions, to which we shall return in some detail. If an exception in subsection (b) permits disclosure by a state DMV to a specific second party, subsection (c) then regulates the separate activity that occurs when the recipient of a record from the DMV is responsible for a secondary disclosure to a third party. Specifically, subsection (c) allows for authorized recipients to “resell or redisclose the information only for a use permitted under subsection (b),” with further exceptions and requirements that need not detain us.[10] Both subsection (a) and (c), therefore, regulate a particular kind of disclosure and direct the details of that regulation to subsection (b).
Our examination of the statute’s structure brings into focus the precise context in which the present case arises. The initial disclosure by the Illinois DMV to the police department, or some other agency through which the police department obtained its record, is governed by subsections (a) and (b); we discern no claim in this case that this transaction violated the statute. Instead, we are concerned with the secondary act of the Village’s police department in placing the citation, which included Mr. Senne’s personal information, on the windshield. With that clarification, we turn to the first question presented: whether the parking citation constituted a disclosure that the statute regulates.
The statute does not define a disclosure, but it does provide us, in context, with sufficient information to discern the meaning of the term. Smith v. Zachary, 255 F.3d 446, 448 (7th Cir.2001) (“[T]he meaning of statutory language, plain or not, depends on context. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” (internal quotation marks omitted) (citations omitted)). The term “disclose” is first used in subsection (a), in the statutory prohibition on initial disclosures. In that section, the statute forbids a state DMV from “knowingly disclos[ing] or otherwise mak[ing] available to any person or entity” protected personal information. In our view, attaching the terms “or otherwise make available” to the term “disclose” leaves little doubt about the breadth of the transactions Congress intended to regulate. Furthermore, we believe it appropriate to read the statute’s later use of the term “disclose” and of “redisclose” as shorthanded references back to subsection (a) and the broad language employed there. *603 So read, it is clear that Congress intended to include within the statute’s reach the kind of publication of information that occurred here, namely, the placement of the printed citation on Mr. Senne’s windshield.
The Village nevertheless maintains that placing the ticket on the windshield did not effect a “disclos[ur]e” within the meaning of the statute, principally because Mr. Senne has failed to allege that anyone other than he, the subject of the record, actually saw it. We are not persuaded by this argument. First, such an interpretation ignores the broad language employed by Congress to define and regulate disclosures. Second, such a reading turns the statutory structure on its head. The default rule of the statute is that the DMV, and any person or entity authorized to view its records, is prohibited from sharing the information. The statute then authorizes specific disclosures — each of which, as we shortly shall examine, has a limited object and a limited class of recipients. See 18 U.S.C. § 2721(b). To suggest that the meaning of the term “disclose” is so limited as to take the act of publication of protected information outside the statute’s reach because no specific recipient is proven simply misunderstands the textual scheme that Congress has forged. The action alleged here, placing the information on the windshield of the vehicle in plain view on a public way, is certainly sufficient to come within the activity regulated by the statute regardless of whether another person viewed the information or whether law enforcement intended it to be viewed only by Mr. Senne himself. The real effect of the placement of the ticket was to make available Mr. Senne’s motor vehicle record to any passer-by. This sort of publication is certainly forbidden by the statute.
The Village also makes a final, related argument that, in order to form the basis for liability, any disclosure must have been made knowingly. See 18 U.S.C. § 2724(a) (“A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains[ ].... ”). According to the Village, because the officer who placed the ticket on the windshield did not know that anyone other than Mr. Senne would view it, there can be no liability. This argument does not persuade us for two reasons. First, it rests on the Village’s erroneous notion that, in order for a disclosure to occur, there must be an identified recipient. Second, it fundamentally misunderstands the term “knowingly.” Voluntary action, not knowledge of illegality or potential consequences, is sufficient to satisfy the mens rea element of the DPPA. See Pichler v. UNITE, 542 F.3d 380, 396-97 (3d Cir.2008) (discussing the term “knowingly” as it is used in the civil liability provisions of the DPPA and finding that knowledge of illegality is not an element).
B. Whether the Statute Authorized the Disclosure
1.
Having determined that there was a disclosure, we now turn to whether the police department’s disclosure of Mr. Senne’s motor vehicle record violated the statute. This task also is basically one of statutory construction.
We focus on the language of the statute, turning to § 2721(b), which contains the universe of required and permissible disclosures:
(b) Permissible uses. — Personal information referred to in subsection (a) shall be disclosed for use in connection with matters of motor vehicle or driver safety and theft, motor vehicle emissions, mo *604 tor vehicle product alterations, recalls, or advisories, performance monitoring of motor vehicles and dealers by motor vehicle manufacturers, and removal of non-owner records from the original owner records of motor vehicle manufacturers to carry out the purposes of titles I and IV of the Anti Car Theft Act of 1992, the Automobile Information Disclosure Act (15 U.S.C. 1231 et seq.), the Clean Air Act (42 U.S.C. 7401 et seq.), and chapters 301, 305, and 321-331 of title 49, and, subject to subsection (a)(2), may be disclosed as follows:
(1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.
(2) For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.
(3) For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only—
(A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and
(B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.
(4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.
(5) For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.
(6) For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.
(7) For use in providing notice to the owners of towed or impounded vehicles.
(8) For use by any licensed private investigative agency or licensed security service for any purpose permitted under this subsection.
(9) For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver’s license that is required under chapter 313 of title 49.
(10) For use in connection with the operation of private toll transportation facilities.
(11) For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to *605 whom such personal information pertains.
(12) For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.
(13) For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.
(14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.
18 U.S.C. § 2721(b).
Against the backdrop of the general rule prohibiting disclosures in subsection (a), subsection (b) provides both a category of mandatory disclosures and several categories of permissive disclosures. See Graczyk v. West Publ’g Co., 660 F.3d 275, 280 (7th Cir.2011) (identifying the statute’s “countervailing purpose” as “allowing] legitimate users to access the records”). The permissive disclosures number fourteen in total and cover a range of purposes and recipients including public entities, insurers, licensed private investigators and certain commercial users such as bulk marketers.
On appeal, the Village contends that the placement of the citation on Mr. Senne’s windshield was permitted under the statute either because the disclosure was “[f]or use by a[ ] ... law enforcement agency! ] in carrying out its functions,” id. § 2721(b)(1), or “[fjor use in connection with any civil! ] ... [or] administrative! ] ... proceeding ..., including the service of process,” id. § 2721(b)(4).[11] The Village does not describe in any length how all the information printed on the ticket served either purpose; instead, it maintains, in effect, that the statute does not require that analysis. In the Village’s view, as long as it can identify a subsection of the law under which some disclosure is permitted, any disclosure of information otherwise protected by the statute is exempt, whether it serves an identified purpose or not.
We cannot accept the Village’s position. As we already have explained, it is necessary to view each provision in context, with an eye toward its contribution to the “overall statutory scheme.” See Smith, 255 F.3d at 448 (internal quotation marks omitted). Here, the statute’s purpose, clear from its language alone, is to prevent all but a limited range of authorized disclosures of information contained in individual motor vehicle records. It is necessary that we respect this textually explicit purpose as we evaluate the coverage of the exceptions within the statute’s broad mandate.
Both of the exceptions that the Village identifies, along with most of the other exceptions in the statute, begin with the phrase “[f]or use.” In the Village’s view, these words supply no meaning to the statutory text other than to link grammatically the “may be disclosed” language in the introductory paragraph of § 2721(b) to the specific purposes and recipients identified in its subsections. We believe that this explanation is unsatisfactory. A basic canon of construction requires us to give meaning to every word of a statute. See Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). More *606 over, and especially in light of the particular statutory structure here that sets forth such a broad prohibition against disclosure, the exceptions should not be read to eviscerate the rule they modify. The words “[f]or use” perform a critical function in the statute and contain the necessary limiting principle that preserves the force of the general prohibition while permitting the disclosures compatible with that prohibition.
Specifically, when the statutory language says that a disclosure is authorized “[f]or use by a[ ] ... law enforcement agency[ ] in carrying out its functions,” 18 U.S.C. § 2721(b)(1) (emphasis added), that language means that the actual information disclosed — i.e., the disclosure as it existed in fact — must be information that is used, for the identified purpose. When a particular piece of disclosed information is not used to effectuate that purpose in any way, the exception provides no protection for the disclosing party. In short, an authorized recipient, faced with a general prohibition against further disclosure, can disclose the information only in a manner that does not exceed the scope of the authorized statutory exception. The disclosure actually made under the exception must be compatible with the purpose of the exception. Otherwise, the statute’s purpose of safeguarding information for security and safety reasons, contained in the general prohibition against disclosure, is frustrated.
Another part of the statutory language supports our conclusion. As we have noted, the statute provides even greater protection to a special class of data referred to as “highly restricted personal information.” 18 U.S.C. § 2721(a)(2). Such information includes an individual’s social security number, photograph and medical or disability information. Id. § 2725(4). For this class of information, the statute allows for access under only four of the listed fourteen exceptions, including both the government function exception and the court process exception at issue in this case. Id. § 2721(a)(2) (listing as permissible uses those described in § 2721(b)(1) and (4)). Clearly, this section recognizes the government’s legitimate need for broader access to personal information than the statute otherwise provides. Nevertheless, it does not provide unlimited authority for law enforcement to access or disseminate the information. Instead, the statute merely allows that certain entities, including law enforcement, may both need and use more kinds of information than other authorized users, within the limitations of the existing exceptions.
The fact that the statute maintains for highly restricted personal information the existing exceptions for use and dissemination provides further support for the view that the exceptions must be read narrowly. If, instead, we were to read the exceptions as broadly as the Village asserts, the effect of the “highly restricted personal information” section would be that the officer could have printed Mr. Senne’s photograph and social security number on the citation and left it open to public view. We decline to read this statute, with a chief aim of privacy protection, to allow such a dangerous result. See City of Chicago v. United States Dep’t of the Treasury, Bureau of Alcohol, Tobacco & Firearms, 423 F.3d 777, 781 (7th Cir.2005) (noting that we will not read a statute to thwart Congress’s manifest intent).
We conclude that the text of the statute limits the content of authorized disclosures of protected information in motor vehicle records through its requirement, clear on its face, that any such disclosure be made “[f]or use” in effecting a particular purpose exempted by the Act.[12]
*607 2.
Although an analysis of the statutory text provides us with a clear answer to our inquiry, we note that the limited legislative history provides significant support for our conclusion. Specifically, it is clear that safety and security concerns associated with excessive disclosures of personal information held by the State in motor vehicle records were the primary issue to be remedied by the legislation. See, e.g., 140 Cong. Rec. H2526 (daily ed. Apr. 20, 1994) (statement of Rep. Porter Goss) (“The intent of this legislation is simple— to protect the personal privacy and safety of all American licensed drivers.”). In hearings held in the House Subcommittee on Civil and Constitutional Rights, numerous witnesses testified regarding the grave consequences of open access to government records of personal information. Not surprisingly, many witnesses mentioned the murder of an actress, Rebecca Schaeffer, by a stalker who had obtained her unlisted home address through the California DMV, a crime that was viewed as a catalyst for both state law privacy protections and the DPPA itself.[13] Other witnesses testified about the impact of the availability of DMV records on the safety of domestic violence victims[14] and law enforcement officers and their families[15] targeted for retribution. Also mentioned, however, were more random acts of violence, including a crime spree of home invasion robberies in Iowa that began when teenagers took down license numbers of expensive vehicles and then obtained the registered owners’ home addresses from DMV records.[16] The bill, it seems, was viewed predominantly as a public safety measure.
Not surprisingly, the Act’s expanded authority for law enforcement was an important part of the same narrative. Providing law enforcement with records as a tool in carrying out their mission was viewed as an appropriate piece of the crime-control strategy the bill would create.[17] Speaking *608 on the Senate floor in support of the bill, Senator Harkin noted that the bill allowed not only access to information by law enforcement but, “[i]n appropriate circumstances,” disclosure “to a citizen or group of citizens [that] will assist in carrying out the function of the agency,” such as a neighborhood watch organization. 139 Cong. Rec. S15,962 (daily ed. Nov. 17, 1993) (statement of Sen. Harkin). However, he qualified that the exception for law enforcement use “is not a gaping loophole in this law.” Id. The exception “provides law enforcement agencies with latitude in receiving and disseminating this personal information,” when it is done “for the purpose of deterring or preventing crime or other legitimate law enforcement functions.” Id. (emphasis added); see also 139 Cong. Rec. S15,764 (daily ed. Nov. 16, 1993) (statement of Sen. John Warner) (“There are specific exceptions of course for law enforcement individuals and other areas where proven experience shows that this information should flow. But in those instances we have to presume it is somewhat protected.” (emphasis added)).
The legislative history confirms what a careful and thorough reading of the statute already has revealed: Congress did not intend that the statutory exceptions be divorced, logically or practically, from the purpose of the statute. With respect to the law enforcement-related exceptions in particular, there is support in the legislative history for the view that the exceptions not only were compatible with the overall purpose, but indeed supported it. Consistent with the textual interpretation that we already have made, the legislative history reflects the view that law enforcement has a legitimate need for information contained in state records and the authority to use that information to effectuate the purposes identified in the Act without fear of liability.
C. The Effect of the DPPA on the Village’s Parking Citation
With this understanding of the statute firmly in mind, we turn to the particulars of this case in its current posture. Certainly, the complaint before us plausibly alleges that the information actually disclosed by the parking citation was not “[f]or use by a[ ] ... law enforcement agency[ ] in carrying out its functions,” or “[f]or use in connection with any civil[ ] ... [or] administrative[ ] ... proceeding ..., including the service of process.” 18 U.S.C. § 2721(b)(1), (4).
The citation provided to Mr. Senne did constitute service of process in the administrative proceeding regarding the parking violation.[18] Further, the issuance of a parking citation is part of the function of the Village’s police department. However, the complaint does put in issue whether all of the disclosed information actually was used in effectuating either of these purposes. The otherwise protected information actually disclosed here included Mr. Senne’s full name, address, driver’s license number, date of birth, sex, height and weight. It is not at all clear that either of the statutory exceptions at issue implicated the release of all of this information. With respect to some of that information, it is difficult to conceive, even on a theoretical level, how such information could play a role in the excepted law enforcement purposes. That issue cannot be resolved on review of the entry of judgment on a motion to dismiss by the Village.
Further proceedings will permit the parties to explore this question. There are *609 very real safety and security concerns at stake here. For example, an individual seeking to stalk or rape can go down a street where overnight parking is banned and collect the home address and personal information of women whose vehicles have been tagged. He can ascertain the name,, exact address including the apartment number and even other information such as sex, age, height and weight pertinent to his nefarious intent. Similarly, a public official, having gone to great lengths to protect himself and his family from the threat of violence that unfortunately every public official faces, bears the risk that an expired parking meter violation might provide an opportunity for an individual intent on causing the official or his family bodily harm or death. Indeed, in the original hearing on the DPPA, law enforcement agents themselves expressed concerns about their personal safety and the safety of their families because of information that otherwise could be obtained from the records associated with their personal vehicles.[19] The possibilities for identity theft are obvious. Given the concern of Congress for these safety and security issues, the disclosed information actually must be used for the purpose stated in the exception.[20]
Conclusion
We hold that the DPPA’s general rule of non-disclosure of personal information held in motor vehicle records and its overarching purpose of privacy protection must inform a proper understanding of the other provisions of the statute. Accordingly, we hold that any disclosure must comply with those legitimate uses of information identified in the statutory exceptions. With these principles in mind, we hold that the Village’s placement of protected personal information in view of the public constituted a disclosure regulated by the statute, regardless of whether Mr. Senne can establish that anyone actually viewed it. Furthermore, because Mr. Senne has articulated a plausible claim that the Village’s actions failed to fulfill its statutory duties, the case should not have been dismissed.
Reversed and Remanded.

. The district court's jurisdiction was premised on 28 U.S.C. § 1331 and 18 U.S.C. § 2724.

. Our jurisdiction is predicated on 28 U.S.C. § 1291.

. Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 934 (7th Cir.2012).

. R.37 at 4.

. Adkins v. VIM Recycling, Inc., 644 F.3d 483, 492 (7th Cir.2011).

. Id. at 492-93.

. The parties raise no issue with respect to the adequacy of the allegations in the complaint under Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

.Section 2725(3) of title 18 defines "personal information” as
information that identifies an individual, including an individual’s photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver’s status.

. ''[HJighly restricted personal information/' as defined in 18 U.S.C. § 2725(4), “means an individual's photograph or image, social security number, [and] medical or disability information.” The parties are in agreement that this category of information, and the restrictions applicable to it, are not at issue in the present case.

. Subsections (d) and (e) relate to waivers of the statute's restrictions by the subject of the record, and limitations by which the State may obtain such waivers; neither ,is claimed to be in issue in the present case.

. On appeal, the Village no longer asserts that any disclosure was permitted under 18 U.S.C. § 2721(b)(2).

. We pause to emphasize that we do not read “use” to mean "necessary use,” nor do *607 we require the Village to adopt some form of "best practices” not commanded by the statute.

. See, e.g., The Driver's Privacy Protection Act of 1993: Hearing on H.R. 3365 Before the Subcomm. on Civil & Constitutional Rights of the H. Comm, on the Judiciary ("Hearing on H.R. 3365 "), 103d Cong., 2d Sess., 1994 WL 212698 (Feb. 4, 1994) (statement of Rep. James P. Moran); Hearing on H.R. 3365, 1994 WL 212813 (Feb. 3, 1994) (statement of Janlori Goldman, Director, Privacy and Technology Project, American Civil Liberties Union).

. Hearing on H.R. 3365, 1994 WL 212822 (Feb. 3, 1994) (statement of David Beatty, Director of Public Affairs, National Victim Center).

. Hearing on H.R. 3365, 1994 WL 212833 (Feb. 3, 1994) (statement of Donald L. Cahill, Legislative Chairman, Fraternal Order of Police).

. Hearing on H.R. 3365, 1994 WL 212698 (Feb. 4, 1994) (statement of Rep. James P. Moran); see also, e.g., Hearing on H.R. 3365, 1994 WL 212701 (Feb. 4, 1994) (statement of David F. Snyder, Assistant General Counsel, American Insurance Association) ("We support this legislation because it may, at least to some extent, prevent violent crime.”); 139 Cong. Rec. S15,762 (daily ed. Nov. 16, 1993) (statement of Sen. Barbara Boxer) (citing similar incidents).

.Looking at all of the available history, there is no question that the exception for law enforcement access to records was viewed as a critical element in the bill's attempt to "balance ... the legitimate governmental and business needs for this information[ ] and the fundamental right of our people to privacy and safety.” 139 Cong. Rec. S15,763 (daily ed. Nov. 16, 1993) (statement of Sen. Barbara Boxer). The existence of an exception related to law enforcement functions was mentioned by numerous supporters of the bill. See, e.g., 140 Cong. Rec. H2522 (daily ed. Apr. 20, 1994) (statement of Rep. James Moran).

. See 625 ILCS 5/1 l-208.3(b)(3) (authorizing municipalities to effect service for parking violations by placing notice on the vehicle); Palatine, Illinois, Code of Ordinances § 2-707(b)(3) (allowing complaints to be affixed to "the property where the violation is found”).

. See Hearing on H.R. 3365, 1994 WL 212833 (Feb. 3, 1994) (statement of Donald L. Cahill, Legislative Chairman, Fraternal Order of Police).

. The issue of the allocation of the burden of proof with respect to the exceptions, see Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A., 525 F.3d 1107, 1110-14 (11th Cir.2008), is premature at this stage of the proceeding. We express no opinion on the matter. We also note that our holding today makes any discussion of the appropriate measure of damages under the statute premature. We therefore pretermit any discussion of the matter.