IN THE

UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

———————————

No.   10-3243

JASON M. SENNE,

*Plaintiff-Appellant*,

*v.*

VILLAGE OF PALATINE,
ILLINOIS,

*Defendant-Appellee.*

————————

Appeal from the United States District Court
for the Northern District of Illinois,
Eastern Division.
No. 1:10-cv-05434--**Matthew F. Kennelly**, *Judge.*

—————

ON MOTION FOR STAY OF MANDATE

SEPTEMBER 6, 2012[*]

—————

———————————

[*]  This opinion is being released in typescript form.

RIPPLE, *Circuit Judge* (in chambers).  This matter is here on the motion of the Village of Palatine for a stay of this court's mandate pending the disposition of a petition for a writ of certiorari by the Supreme Court of the United States.  Because I believe that the Village has not carried its burden of showing that there is a reasonable probability that four Justices will vote to grant the writ of certiorari and that there is a reasonable possibility that five Justices will vote to reverse this court's judgment, I must deny the requested relief.  Alternatively, assuming, for the sake of argument, that the Village has shown the requisite probability of success on the merits, the Village has not met its burden of showing the requisite harm if the stay is not granted.

This case presented our court with an issue of first impression both in this circuit and in the United States.  After a thorough review at the panel level, the court, sitting en banc, reversed the district court's dismissal of Jason Senne's action against the Village of Palatine.  *Senne v. Vill. of Palatine*, No. 10-3243, WL 3156335, at *10 (7th Cir. Aug. 6, 2012) (en banc).  Mr. Senne had alleged violations of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-25.  The court determined that his complaint plausibly alleged a violation of the statute.  While noting the "very real safety and security concerns at stake," we left it to the district court to explore on remand whether the information disclosed by the Village's police department was used for a purpose exempted from the non-disclosure provisions of the statute.  *Senne,* 2012 WL 3156335, at *9-10.  We further pretermitted any discussion of the burden of proof with respect to the statutory exceptions as well any determination of the measure of damages.[1]

The standards that govern the disposition of this motion are well established.  "When a party asks this court to stay its mandate pending the filing of a petition for a writ of certiorari, that party must show that the petition will present a substantial question and that there is good cause for a stay."  *Books v. City of Elkhart*, 239 F.3d 826, 827 (7th Cir. 2001) (Ripple, J., in chambers) (citing Fed. R. App. P. 41(d)(2)(A)).  The grant of a motion to stay the mandate "is far from a foregone conclusion."  16AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3987.1 (4th ed. 2008).  Instead, the party seeking the stay must demonstrate both "'a reasonable probability of

---

[1]  Our mandate was scheduled to issue on August 27, 2012.  The filing of this motion to stay has stayed temporarily its issuance.

succeeding on the merits' and 'irreparable injury absent a stay.'" *Bricklayers Local 21 of Illinois Apprenticeship & Training Program v. Banner Restoration, Inc.*, 384 F.3d 911, 912 (7th Cir. 2004) (Ripple, J., in chambers) (quoting *Galdikas v. Fagan*, 347 F.3d 625, 625 (7th Cir. 2003) (Ripple, J., in chambers)); *see also Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (per curiam); *United States v. Holland*, 1 F.3d 454, 456 (7th Cir. 1993) (Ripple, J., in chambers).  More precisely, in order to demonstrate a reasonable probability of succeeding on the merits of the proposed certiorari petition, a party must demonstrate a reasonable probability that four Justices will vote to grant certiorari and that five Justices will vote to reverse the judgment of this court.  *See California v. American Stores Co.*, 492 U.S. 1301, 1307 (1989); *United States v. Warner*, 507 F.3d 508, 511 (7th Cir. 2007) (Wood, J., in chambers); *Williams*, 50 F.3d at 1360.  In applying this standard, we must consider carefully the issues that the applicant plans to raise in its certiorari petition in the context of the case history, the Supreme Court's treatment of other cases presenting similar issues and the considerations that guide the Supreme Court in determining whether to issue a writ of certiorari. *Williams*, 50 F.3d at 1361.

Noting that Congress enacted the Driver's Policy Protection Act under its Commerce Clause power, *see Reno v. Condon*, 528 U.S. 141, 148 (2000), the Village states that it intends to argue that regulating the use of personal information on parking tickets--as opposed to the sale of personal information-- exceeds Congress's authority under the Commerce Clause.  The contours of the commerce power argument that the Village intends to present to the Supreme Court are not discernible with any precision from the laconic reference in the motion.  However, one nearly insuperable barrier to its consideration by the Court is evident.  The issue never was raised throughout the proceeding in this court.  It would be indeed a rare occasion for the Supreme Court to consider on certiorari an argument that could have been presented to the court of appeals in the normal course of litigation, but was not, appearing only after the last drop of ink had been expended in not one, but two, rounds of consideration by the court of appeals.

It is difficult to ascertain the precise commerce power argument the Village has in mind.  Nevertheless, for the sake of completeness, I simply shall point out that, although the Supreme Court recently has explored the boundaries of the commerce power, *see, e.g., Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2587 (2012), this case presents a far different situation and one

upon which the Court already has passed. Here, there is no instance of the federal government forcing a state or an individual to participate in an interstate market. Indeed, the answer that the Court gave to a constitutional challenge to the DPPA in *Reno*, seems unaffected by *National Federation*:

> The United States bases its Commerce Clause argument on the fact that the personal, identifying information that the DPPA regulates is a "thin[g] in interstate commerce," and that the sale or release of that information in interstate commerce is therefore a proper subject of congressional regulation. *United States v. Lopez*, 514 U.S. 549, 558-559 (1995). We agree with the United States' contention. The motor vehicle information which the States have historically sold is used by insurers, manufacturers, direct marketers, and others engaged in interstate commerce to contact drivers with customized solicitations. The information is also used in the stream of interstate commerce by various public and private entities for matters related to interstate motoring. Because drivers' information is, in this context, *an article of commerce*, *its sale or release* into the interstate stream of business is sufficient to support congressional regulation.

*Reno*, 528 U.S. at 148 (emphasis added). Notably, *Reno* does not appear to rely on the *sale* of any information. Instead, it identifies the information that the state possesses and "release[s]" into interstate commerce as "an article of commerce."[2] The states' ongoing decision to *release* that article would seem to

---

[2] *Reno v. Condon*, 528 U.S. 141 (2000), involved the *sale* of information by the State of South Carolina, and the Court based its preliminary holding that the statute is within the commerce power on that set of facts. In accepting the argument that the Commerce Clause directly authorized regulation, the Court explicitly declined to address the alternative argument for constitutionality, "that the States' individual, intrastate activities in gathering, maintaining, and distributing drivers' personal information have a sufficiently substantial impact on interstate commerce to create a constitutional base for federal legislation." *Id.* at 148-49. In *Reno*, therefore, the Government supplied the Court with a

(continued...)

be the critical distinction here.  Under the reading of the DPPA adopted by this court, states are not penalized for inactivity, nor are they forced into activity; they simply are regulated in an activity they voluntarily undertake because that activity involves data that the Supreme Court already has determined to be "an article of commerce."

The Village also plans to submit to the Supreme Court several arguments about this court's interpretation of the statute.  It begins by suggesting that the purpose of the DPPA was limited to the *sale* of personal information by state motor vehicle departments.  Although the Village generally condemns our court for ignoring a plain language approach in its interpretation of the statute, it ignores the fact that the plain language of the statute supports the view that the statute's scope, while certainly including the sale of such information, facially regulates other sorts of dissemination as well.  The terms of 18 U.S.C. § 2721(a) are clear.  The statute regulates a state's ability to *disclose* (not simply to "sell").  Employing "disclose" rather than "sale" does not appear to be an unconscious use of a more general term by Congress in crafting its background rule of non-release of information because the statute later, in subsection (c), specifically regulates "[r]esale or [r]edisclosure."  Reading these two subsections side-by-side, it is clear that Congress consciously chose to regulate activity *beyond* sales and, indeed, to establish a broad background rule of *non-disclosure* from which the listed exceptions obtain.  The statutory language alone, therefore, undercuts any argument that Congress intended to limit the reach of the statute to commercial transactions.

The motion continues its condemnation of the court's statutory analysis by suggesting that this case presents, in stark relief, a division among the circuit judges over the proper methodology of interpreting statutes.  In the Village's view, the dissenters have adhered to the plain text, while the court has rewritten the statute to cover what it believes Congress should have included in order to

---

[2](...continued)
rationale that would have allowed them to uphold the DPPA's regulation data under an even more attenuated relationship to commerce; without limiting its holding to data that actually *was sold*, *see id.* at 148 (referencing "sale *or release*"), the Court viewed the data as a sufficient item in interstate commerce itself to justify regulation.

achieve its goals. Def.'s Mot. to Stay 12 (citing *Lewis v. City of Chicago*, 130 S. Ct. 2191, 2200 (2010)). A fair reading of the court's opinion makes very clear the unfairness of this characterization. Indeed, the court in its textual analysis emphasized the importance of the "basic canon of construction to give meaning to every word of the a statute." *Senne*, 2012 WL 3156335, at *7 (citing *Duncan v. Walker,* 533 U.S. 167, 174 (2001)). At bottom, what separates the judges of the circuit is a respectful disagreement about what the words of the statutory text convey.

The motion makes several more points about the merits of the case and its candidacy for a grant of certiorari. It suggests that the mere fact that our court decided to hear the case en banc demonstrates that the court's final disposition of the case is worthy of review on certiorari. This argument, occupying a significant amount of space in the motion, needs little comment. The grant of an en banc hearing by a court of appeals can be motivated by many factors, including a belief that a panel's decision is so wrong that it will frustrate the statutory intent and upset the settled understanding of the statute's command. Indeed, it is not at all clear, despite two rounds of appellate hearings, that the absence of earlier litigation on this statutory provision is due to anything other than forthright obedience to the plain command of the statute.

The procedural posture of this litigation also makes this case a very poor candidate for a grant of certiorari. As noted earlier, the district court must address on remand whether the information in question was used for a governmental activity mentioned in the statutory exemptions. *See Senne*, 2012 WL 3156335, at *10. The Village has not been heard on this important question. Secondly, the court pointedly pretermitted any discussion about the appropriate measure of damages.

I turn now to the alternate ground of irreparable injury. Because the court of appeals merely reversed the grant of a motion to dismiss for failure to state a cause of action, there is no monetary judgment at issue. Moreover, before the en banc court, the Village represented that it had modified its practices. There is no indication that modification of traffic citation practice to ensure that irrelevant personal information was eliminated from public view was a significant burden. No argument is made that elimination of such information has hampered in any way law enforcement efforts.

Because the Village has not met the established criteria for the granting of a stay, I must deny the motion.