NEW RICHMOND NEWS and Steven
Dzubay,Plaintiffs-Respondents,

v.

CITY OF NEW RICHMOND, Defendant-Appellant.

Court of Appeals

*No. 2014AP1938. Submitted on briefs February 16, 2016.
—Decided May 10, 2016.*

**2016 WI App 43**

(Also reported in 881 N.W.2d 339.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Remzy D. Bitar, Timothy M. Johnson* and *Samantha R. Schmid* of *Crivello Carlson, S.C.*, Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Robert J. Dreps* and *Dustin B. Brown* of *Godfrey & Kahn, S.C.*, Madison.

A nonparty brief was filed by *Brad D. Schimel*, attorney general, *Andrew C. Cook*, deputy attorney general, and *Delanie Breuer*, assistant attorney general, for the Wisconsin Department of Justice.

A nonparty brief was filed by *Claire Silverman* of Madison, for League of Wisconsin Municipalities, and *Andrew T. Phillips* of *von Briesen & Roper, S.C.*, of Milwaukee, for Wisconsin Counties Association.

A nonparty brief was filed by *Michael J. Modl, Timothy M. Barber* and *Gesina M. Seiler* of *Axley Brynelson, LLP*, of Madison, for Wisconsin County Mutual Insurance Corporation and Community Insurance Corporation.

A nonparty brief was filed by *Christa Westerberg* of *McGillivray Westerberg & Bender LLC*, of Madison, for Wisconsin Newspaper Association, and Reporters Committee for Freedom of the Press.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. STARK, P.J. New Richmond News and its publisher, Steven Dzubay, (collectively, the Newspaper) requested two accident reports and two incident reports from the City of New Richmond Police Department, pursuant to Wisconsin's public records law. The police department ultimately provided the reports, but it redacted information identifying individuals referenced in both of the accident reports and one of the incident reports. Relying on *Senne v. Village of Palatine*, 695 F.3d 597 (7th Cir. 2012), the police department contended these redactions were required by the federal Driver's Privacy Protection Act (DPPA). The Newspaper then sued the City of New Richmond, alleging the police department's failure to provide unredacted copies of the requested reports violated the public records law. The circuit court granted the Newspaper judgment on the pleadings, concluding the DPPA did not prohibit the department from providing unredacted copies of the reports.

81

¶ 2. We conclude the police department was permitted to release unredacted copies of the accident reports requested by the Newspaper, pursuant to the DPPA exception allowing disclosures specifically authorized under state law, if such use is related to the operation of a motor vehicle or public safety. *See* 18 U.S.C. § 2721(b)(14). Wisconsin law specifically requires police departments to release accident reports upon request. *See* Wis. Stat. § 346.70(4)(f).[1] We therefore affirm the circuit court's decision with respect to the accident reports.

¶ 3. However, we reverse the circuit court's decision that the DPPA did not prohibit the department from releasing an unredacted copy of the incident report requested by the Newspaper. The circuit court concluded 18 U.S.C. § 2721(b)(1), the DPPA exception allowing disclosure for use by a government agency in carrying out its functions, permitted the police department to release the incident report in response to the Newspaper's public records request because responding to public records requests is a "function" of the police department. However, as we explain below, accepting that conclusion would lead to results that are in direct conflict with the DPPA. We therefore reverse the circuit court's determination that release of the incident report was permissible under § 2721(b)(1) by virtue of the public records law. Nevertheless, we remand for a determination of whether release of the incident report serves some other function of the police department, beyond mere compliance with the public records law, such that release of the unredacted report was otherwise permitted under § 2721(b)(1).

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

¶ 4. In addition, we observe there is a factual dispute regarding whether the redacted information in the incident report was obtained from department of motor vehicle (DMV) records, or merely verified using those records. If the redacted information was obtained from other sources and was only verified using DMV records, it is not protected by the DPPA in the first instance. We therefore direct the circuit court on remand to determine, as a threshold matter, whether the redacted information in the incident report was obtained from DMV records.

## RELEVANT AUTHORITIES

## I. DPPA

¶ 5. The DPPA was enacted in 1994 to "limit the release of an individual's personal information contained in his [or her] driver's license record to those who had a legitimate and lawful need for the information." *Kehoe v. Fidelity Fed. Bank & Trust*, 421 F.3d 1209, 1210 (11th Cir. 2005). In particular, the DPPA "responded to at least two concerns over the personal information contained in state motor vehicle records." *Maracich v. Spears*, 133 S. Ct. 2191, 2198 (2013). The first of these concerns was "a growing threat from stalkers and criminals who could acquire personal information from state [departments of motor vehicles]." *Id.* "The second concern related to the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation." *Id.*

¶ 6. In response to these concerns, Congress established a regulatory scheme that restricts disclosure of drivers' personal information without their consent. *Id.* First, the DPPA sets forth the following prohibition

83

regarding the release of certain types of information from motor vehicle records kept by state DMVs:

> A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:
>
> (1) personal information . . . about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b) of this section; or
>
> (2) highly restricted personal information . . . about any individual obtained by the department in connection with a motor vehicle record, without the express consent of the person to whom such information applies, except uses permitted in subsections (b)(1), (b)(4), (b)(6), and (b)(9) . . . .

18 U.S.C. § 2721(a). For purposes of the DPPA, "personal information" means

> information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5–digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

*Id.*, § 2725(3) (footnote omitted). "Highly restricted personal information" means "an individual's photograph or image, social security number, medical or disability information." *Id.*, § 2725(4). "Motor vehicle record" means "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." *Id.*, § 2725(1).

¶ 7. The DPPA's disclosure prohibition is then subject to fourteen exceptions, or "permissible uses," listed in subsec. (b).[2] *See* 18 U.S.C. § 2721(b); *see also Senne*, 695 F.3d at 605 ("Against the backdrop of the general rule prohibiting disclosures in subsection (a), subsection (b) provides . . . several categories of permissive disclosures."). As relevant here, subsec. (b) provides that personal information "may be disclosed":

> (1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.
>
> . . . .
>
> (14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

18 U.S.C. § 2721(b).

¶ 8. The prohibition and exceptions set forth in 18 U.S.C. § 2721(a) and (b) also extend to "authorized recipients" of personal information from state DMVs, who may "resell or redisclose the information only for a use permitted under subsection (b)," subject to certain exceptions not applicable here. *See id.*, § 2721(c). The DPPA creates a private right of action for any individual whose personal information is unlawfully disclosed. *See id.*, § 2724(a) ("A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to

---

[2] Subsection (b) also includes one category of mandatory disclosures that is not at issue here. *See* 18 U.S.C. § 2721(b).

whom the information pertains, who may bring a civil action in a United States district court."). Available remedies for the violation are: (1) actual damages, but not less than liquidated damages of $2,500; (2) punitive damages for willful or reckless violations; (3) attorney fees and costs; and (4) "such other preliminary and equitable relief as the court determines to be appropriate." *Id.*, § 2724(b).

## II. Wisconsin's public records law

¶ 9. Wisconsin's public records law is a "fundamental concept[] in our state's history of transparent government" and was enacted "to promote public access to actions of governmental bodies." *Journal Times v. City of Racine Bd. of Police & Fire Comm'rs*, 2015 WI 56, ¶ 45, 362 Wis. 2d 577, 866 N.W.2d 563. WISCONSIN STAT. § 19.31 provides:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

Our supreme court has described the statement of public policy in § 19.31 as "one of the strongest decla-

rations of policy to be found in the Wisconsin statutes."
*Zellner v. Cedarburg Sch. Dist.*, 2007 WI 53, ¶ 49, 300
Wis. 2d 290, 731 N.W.2d 240.

■

¶ 10. Although strong, Wisconsin's public policy
in favor of openness is not absolute. *Id.*, ¶ 50. WISCONSIN
STAT. § 19.35(1)(a) provides that any requester has a
right to inspect any record "[e]xcept as otherwise pro-
vided by law." In addition, WIS. STAT. § 19.36(1) states
that "[a]ny record which is specifically exempted from
disclosure by state or federal law . . . is exempt from
disclosure under s. 19.35(1), except that any portion of
that record which contains public information is open to
public inspection as provided in sub. (6)." Subsection (6),
in turn, provides that when a record contains both
information subject to disclosure under § 19.35 and
information not subject to disclosure, "the authority
having custody of the record shall provide the informa-
tion that is subject to disclosure and delete the informa-
tion that is not subject to disclosure from the record
before release." Sec. 19.36(6).

■

¶ 11. "When addressing [a public] records re-
quest, a records custodian must make the initial deci-
sions on whether a requested item is a 'record' and
whether any statutory or common law exceptions to
disclosure apply." *John K. MacIver Inst. for Pub. Policy,
Inc. v. Erpenbach*, 2014 WI App 49, ¶ 13, 354 Wis. 2d
61, 848 N.W.2d 862. In addition, the custodian "must
weigh the competing interests involved and determine
whether permitting inspection would result in harm to
the public interest which outweighs the legislative
policy recognizing the public interest in allowing inspec-
tion." *Woznicki v. Erickson*, 202 Wis. 2d 178, 192,

549 N.W.2d 699 (1996) (quoting *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979)). If an authority denies a written public records request in whole or in part, "the requester shall receive from the authority a written statement of the reasons for denying the written request." WIS. STAT. § 19.35(4)(b).

¶ 12. If an authority withholds all or part of a requested record, the requester may bring an action for mandamus asking a court to order release of the record, or may ask the district attorney or attorney general to file a mandamus action on the requester's behalf. WIS. STAT. § 19.37(1)(a)-(b). If the requester prevails, the court shall award the requester "reasonable attorney fees, damages of not less than $100, and other actual costs." Sec. 19.37(2)(a). The court shall also award the requester actual damages if it finds the authority acted in a willful or intentional manner, and it may award punitive damages if it finds the authority's denial was arbitrary and capricious. Secs. 19.37(2)(b), (3).

## III. WISCONSIN STAT. § 346.70

¶ 13. WISCONSIN STAT. § 346.70(4)(a) requires "every law enforcement agency investigating or receiving a report of a traffic accident" to "forward an original written report of the accident or a report of the accident in an automated format to the department [of transportation] within 10 days after the date of the accident." The statute further provides that

> any person may with proper care, during office hours, and subject to such orders or regulations as the custodian thereof prescribes, examine or copy such uniform traffic accident reports, including supplemental or additional reports, statements of witnesses, photo-

graphs and diagrams, retained by local authorities, the state traffic patrol or any other investigating law enforcement agency.

Sec. 346.70(4)(f).

## IV. *Senne v. Village of Palatine*

¶ 14. The United States Court of Appeals for the Seventh Circuit recently interpreted and applied the DPPA's agency functions exception in *Senne*. *Senne* arose out of a village police department's practice of placing parking tickets containing personal information obtained from DMV records under the windshield wipers of vehicles parked on public streets. *See Senne*, 695 F.3d at 600. After receiving such a ticket, Senne brought a class action lawsuit against the Village, arguing the placement of parking tickets on vehicle windshields, where anyone might see the personal information they contained, was a disclosure prohibited by the DPPA. *Id.* The district court dismissed Senne's lawsuit, concluding the parking tickets did not constitute disclosures under the DPPA, and, even if they did, the disclosures were permitted under the agency functions exception. *Id.* at 600–01.

¶ 15. The Seventh Circuit, reviewing *en banc* the district court's dismissal of Senne's lawsuit, held the parking tickets were disclosures under the DPPA. *Id.* at 602–03. The court then considered whether the disclosures were permitted under either the agency functions exception in 18 U.S.C. § 2721(b)(1) or the exception in § 2721(b)(4) "[f]or use in connection with any civil . . . [or] administrative . . . proceeding . . . including the service of process." *Senne*, 695 F.3d at 605–06. The court observed the Village did not "describe in any length how all the information printed

on the ticket[s] served either purpose." *Id.* at 605. Instead, the Village argued that "as long as it can identify a subsection of the [DPPA] under which *some* disclosure is permitted, *any* disclosure of information otherwise protected by the statute is exempt, whether it serves an identified purpose or not." *Id.*

¶ 16. The Seventh Circuit rejected the Village's argument, concluding that "[w]hen a particular piece of disclosed information is not *used* to effectuate [the purpose identified in one of the DPPA's exceptions] in any way, the exception provides no protection for the disclosing party." *Id.* at 606. The court reasoned the purpose of the DPPA, "clear from its language alone, is to prevent all but a limited range of authorized disclosures of information contained in individual motor vehicle records." *Id.* at 605. The court stated it was necessary to "respect this textually explicit purpose" when evaluating "the coverage of the exceptions within the [DPPA's] broad mandate." *Id.*

¶ 17. The court then focused on the words "for use" in the relevant exceptions, concluding those words "perform a critical function in the statute and contain the necessary limiting principle that preserves the force of the general prohibition while permitting the disclosures compatible with that prohibition." *Id.* "Specifically, when the statutory language says that a disclosure is authorized 'for *use* by a[ ] . . . law enforcement agency[ ] in carrying out its functions,' . . . that language means that the actual information disclosed . . . must be information that is *used* for the identified purpose." *Id.* at 606 (quoting 18 U.S.C. § 2721(b)(1)). The court concluded:

> In short, an authorized recipient, faced with a general prohibition against further disclosure, can disclose the

information only in a manner that does not *exceed the scope* of the authorized statutory exception. The disclosure actually made under the exception must be compatible with the purpose of the exception. Otherwise, the statute's purpose of safeguarding information for security and safety reasons, contained in the general prohibition against disclosure, is frustrated.

*Id.*

¶ 18. Applying this principle to the facts at hand, the court concluded the parking ticket placed on Senne's vehicle "did constitute service of process in the administrative proceeding regarding the parking violation." *Id.* at 608. The court also concluded the issuance of parking tickets is "part of the function of the Village's police department." *Id.* However, the court stated Senne's complaint "put in issue whether all of the disclosed information actually *was used* in effectuating either of these purposes." *Id.* Noting that the protected information disclosed on the ticket included Senne's full name, address, driver's license number, date of birth, sex, height, and weight, the court stated it was "not at all clear that either of the statutory exceptions at issue implicated the release of all of this information." *Id.* Accordingly, the court concluded the district court erred by dismissing Senne's complaint, and it remanded the case for further proceedings—namely, a determination of whether the disclosure of each piece of personal information on the ticket furthered the permissible uses in either 18 U.S.C. § 2721(b)(1) or (b)(4). *Senne,* 695 F.3d at 609.

¶ 19. On remand, the district court determined disclosure of all the personal information on Senne's ticket furthered the purposes listed in both 18 U.S.C. §§ 2721(b)(1) and (4), and the Seventh Circuit affirmed that conclusion on appeal. *See Senne v. Village of*

91

*Palatine*, 784 F.3d 444, 446, 448 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 419 (2015). The police chief had testified on remand that the personal information included on parking tickets served a number of purposes, including showing vehicle owners that police knew their identities and addresses and would therefore have no difficulty locating them, thus increasing the likelihood tickets would be paid. *Id.* at 446. The Seventh Circuit concluded Senne had presented no evidence to contest the police chief's testimony, and he therefore failed to create an issue for trial. *Id.* at 447.

## BACKGROUND

¶ 20. On January 15, 2013, the Newspaper sent a letter to the City's police chief, Mark Samelstad, requesting copies of two accident reports and two incident reports, pursuant to Wisconsin's public records law. The letter stated,

> As you're aware, we appear to have a difference of opinion on interpretation [of] the recent decision by the Seventh Circuit Court of Appeals (SENNE v. VILLAGE OF PALATINE ILLINOIS) under which your department practices have changed on the belief that release of certain public records would now be in deference to the Driver's Privacy Protection Act.
>
> The [Newspaper is] of the opinion that accident[] and incident reports and citations issued by your department remain open records which should be readily accessible to members of the public without need for prior redaction of certain information by law enforcement.
>
> . . . .
>
> I'd like to respectfully request to receive copies of the reports associated with each of the incidents below,

generated as a result of your department's involvement. In lieu of those reports, I'd ask that you explain why [the Newspaper] should not be allowed to view the reports in their entirety.

¶ 21. Samelstad responded to the Newspaper's request by letter dated January 21, 2013. He explained that the DPPA limits disclosure of personal information obtained through DMV records. He then explained that New Richmond police officers use a computer program called "Tracs" when filling out accident reports and traffic citations, which automatically populates those documents with personal information taken from DMV records. Personal information regarding individuals referenced in incident reports is also "obtained and verified" using DMV records. Samelstad therefore asserted that, based on *Senne*, he would "have to deny [the Newspaper's] request for copies of all un-redacted accidents and citations issued by this Department[.]" Samelstad acknowledged the police department had changed its policy regarding disclosure of this information in response to *Senne*.

¶ 22. On January 30, 2013, the Newspaper asked the police department to reconsider its interpretation of the DPPA, citing an informal opinion issued by the Wisconsin attorney general in 2008, which concluded the DPPA did not require redaction of personal information contained in law enforcement records produced in response to public records requests. *See* Letter from Wis. Atty. Gen. J.B. Van Hollen to Robert J. Dreps and Jennifer L. Peterson, 2008 WL 1970575 (Apr. 29, 2008) (hereinafter, 2008 Informal Opinion). The police department refused to reconsider its position. Instead, it provided redacted versions of both accident reports and one of the incident reports the Newspaper re-

quested.[3] On the two accident reports, which used the standard Wisconsin Motor Vehicle Accident Report form, the department redacted the names, birth dates, addresses, telephone numbers, and driver's license numbers of the drivers, vehicle owners, and witnesses, as well as the vehicle identification numbers for the vehicles involved. For the incident report, which involved a theft of gasoline from a Kwik Trip convenience store, the department redacted the names, addresses, and phone numbers of the complainant, a suspect, and one other person.

¶ 23. On March 18, 2013, the Newspaper filed the instant lawsuit against the City, claiming the police department had violated the public records law by redacting identifying information from three of the reports the Newspaper requested.[4] The Newspaper's complaint asserted the DPPA "was not intended to, and does not, require removal of identifying information from law enforcement records, nor otherwise alter the Department's responsibilities, under the [Public] Records Law."

¶ 24. The Newspaper ultimately moved for judgment on the pleadings, pursuant to Wis. Stat. § 802.06(3). The circuit court granted that motion on March 20, 2014. As an initial matter, the court determined *Senne* was "factually and legally distinguishable" because it did not address the application of the

---

[3] The second incident report was apparently provided without redaction because the personal information contained in it was not obtained from or verified using DMV records.

[4] Attached to the Newspaper's complaint were copies of the Newspaper's January 15 request for the reports, Samelstad's January 21 response, the Newspaper's January 30 request for reconsideration, the attorney general's 2008 informal opinion, and the redacted reports the department ultimately provided.

DPPA in connection with a valid request for information under a state public records law. The court then concluded that, although the DPPA generally prohibits the disclosure of personal information from DMV records, the exception allowing disclosure "[f]or use by any government agency . . . in carrying out its functions," *see* 18 U.S.C. 2721(b)(1), permitted full disclosure of the records requested by the Newspaper. The court reasoned the requested records "relate[d] to the official acts of police officers responding to and reporting on specific events in the City[,]" and it was "an official act of the City to respond to such records requests in compliance with the [Public] Records Law." "As such," the court concluded, "the umbrella of § 2721(b)(1) allows for such permissible disclosure to allow the City to carry out this 'essential function.' "

¶ 25. The court also noted that 18 U.S.C. § 2721(b)(14) provides a "broad exception" for uses specifically authorized under Wisconsin law, if such use is related to the operation of a motor vehicle or public safety. The court observed that, under WIS. STAT. § 346.70(4), "uniform traffic accident reports are required to be disclosed upon request, subject to the order and requirements of the custodian of such reports." The court reasoned such disclosure "is directly related to the public safety of the City as enforced by the Police Department and other agencies." Accordingly, the court concluded the required disclosure of accident reports under § 346.70(4) "f[ell] within § 2721(b)(14) as a use related to the operation of a motor vehicle or public safety." In addition, the court stated the two accident reports requested by the Newspaper were not subject to the DPPA in the first place because they "[did] not fit the statutory definition of 'personal information' under § 2725(3)."

¶ 26. The court therefore held that the DPPA "does not require the redaction of the information requested by [the Newspaper] because such disclosure is permitted under [18 U.S.C.] § 2721(b) and the Wisconsin [Public] Records Law requires the City to respond to records requests and provide such information in the performance of official duties by the City." A judgment was entered on July 2, 2014, awarding the Newspaper $100 in damages, actual costs, and $63,582.51 in attorney fees.

¶ 27. The City subsequently filed a notice of appeal, and on April 17, 2015, the Wisconsin Supreme Court granted the parties' joint petition to bypass the court of appeals. Following briefing and oral argument, the supreme court issued a decision on December 18, 2015, indicating the court was equally divided on whether to affirm or reverse the circuit court's judgment. *See New Richmond News v. City of New Richmond*, 2015 WI 106, ¶ 1, 365 Wis. 2d 610, 875 N.W.2d 107. The court therefore vacated its order granting the petition to bypass and remanded the matter to this court. *Id.*, ¶ 3.

## STANDARDS OF REVIEW

¶ 28. "A judgment on the pleadings is essentially a 'summary judgment minus affidavits and other supporting documents.'" *Freedom from Religion Found., Inc. v. Thompson*, 164 Wis. 2d 736, 741, 476 N.W.2d 318 (Ct. App. 1991) (quoting *Schuster v. Altenberg*, 144 Wis. 2d 223, 228, 424 N.W.2d 159 (1988)). We therefore apply the first two steps of summary judgment methodology to determine whether judgment on the pleadings is appropriate. *Id.* First, we examine the com-

plaint to determine whether it states a claim on which relief can be granted. *Id.* If so, we determine whether the answer shows the existence of a material factual dispute. *Id.* "If the complaint is sufficient to state a claim and the responsive pleadings raise no material issues of fact, judgment on the pleadings is appropriate." *Id.* Whether a circuit court properly granted judgment on the pleadings is a question of law for our independent review. *See id.*

¶ 29. With one exception, which we discuss below, the facts of this case are undisputed. *See infra,* ¶¶ 50–52. Instead, the primary issue on appeal is whether, based on these facts, the circuit court properly determined the City violated the public records law by failing to disclose unredacted copies of the records requested by the Newspaper. Resolution of this issue requires us to interpret and apply the public records law, the DPPA, and Wis. Stat. § 346.70. The interpretation of statutes and their application to undisputed facts are questions of law that we review independently. *Andersen v. DNR*, 2011 WI 19, ¶ 26, 332 Wis. 2d 41, 796 N.W.2d 1.

¶ 30. Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* Statutory language is interpreted in context, and reasonably, to avoid absurd or unreasonable results. *Id.*, ¶ 46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity,

and the statute is applied according to this ascertainment of its meaning." *Id.* (quoting *Bruno v. Milwaukee Cty.*, 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656). If a statute is ambiguous, we examine extrinsic sources, such as legislative history, to determine the legislature's intent. *Orion Flight Servs., Inc. v. Basler Flight Serv.*, 2006 WI 51, ¶ 17, 290 Wis. 2d 421, 714 N.W.2d 130.

¶ 31. This case also involves an issue regarding federal preemption of state law. Whether a federal statute preempts a state law is a question of law that we review independently. *See Aurora Med. Grp. v. DWD*, 2000 WI 70, ¶ 11, 236 Wis. 2d 1, 612 N.W.2d 646.

## DISCUSSION

¶ 32. It is undisputed that the Wisconsin DMV disclosed personal information from motor vehicle records to the police department. It is further undisputed that this initial disclosure of personal information was for a permissible use under the DPPA—namely, the police department's officers used the information in the course of their duties to complete accident and incident reports. *See* 18 U.S.C. § 2721(b)(1) (disclosure of personal information permitted "[f]or use by any government agency . . . in carrying out its functions"). The disputed issue is whether the police department's subsequent redisclosure to the Newspaper of personal information contained in two accident reports and one incident report created by its officers would have been permissible under § 2721(c), which regulates the "redisclosure" of personal information by an "authorized recipient." As relevant here, such redisclo-

sure is permissible "only for a use permitted under subsection (b)." *Id.*, § 2721(c).[5]

[5] The attorney general's 2008 informal opinion states that "[r]edisclosure of personal information included in law enforcement records in response to a public records request . . . is not the type of redisclosure prohibited by [18 U.S.C. § 2721(c)]." Letter from Wis. Atty. Gen. J.B. Van Hollen to Robert J. Dreps and Jennifer L. Peterson, 2008 WL 1970575, *7 (Apr. 29, 2008) (hereinafter, 2008 Informal Opinion). We disagree.

In support of the conclusion that 18 U.S.C. § 2721(c) did not apply to redisclosure of personal information from law enforcement records in response to public records requests, the attorney general cited *Reno v. Condon*, 528 U.S. 141, 146 (2000), for the proposition that "[s]ection 2721(c) only 'regulates the resale and redisclosure of drivers' personal information *by private persons* who have obtained that information *from a state DMV.'* " 2008 Informal Opinion, 2008 WL 1970575 at *7 (emphasis in 2008 Informal Opinion). However, *Condon* does not actually state that § 2721(c) *only* applies to resale or redisclosure by private persons. Rather, citing § 2721(c), it states, "The DPPA's provisions *do not apply solely to States.* The Act *also* regulates the resale and redisclosure of drivers' personal information by private persons who have obtained that information from a state DMV." *Condon*, 528 U.S. at 146 (emphasis added). That § 2721(c) regulates the redisclosure and resale of personal information obtained from state DMVs by private individuals does not mean the section cannot also apply to law enforcement agencies.

By its plain language, 18 U.S.C. § 2721(c) applies to "authorized recipients" of personal information from state DMVs. The term "authorized recipient" is not defined in the statute. Here, however, it is undisputed that the police department received personal information from the Wisconsin DMV for one of the permissible purposes listed in § 2721(b). Thus, logic would dictate that the police department is an "authorized recipient" of personal information, for purposes of § 2721(c).

We acknowledge that some federal cases distinguish between an entity being an authorized user, under 18 U.S.C. § 2721(b), and an "authorized recipient" under § 2721(c). *See, e.g., Taylor v. Acxiom Corp.*, 612 F.3d 325, 338–39 (5th Cir. 2010). However, in *Senne v. Village of Palatine*, 695 F.3d 597,

¶ 33. The circuit court concluded the police department could have released unredacted copies of the accident reports requested by the Newspaper under 18 U.S.C. § 2721(b)(14), and it could have released unredacted copies of all three reports under § 2721(b)(1). We address these exceptions in turn.[6]

## I. 18 U.S.C. § 2721(b)(14)—the "state law" exception

■■■

¶ 34. As noted above, the DPPA contains an exception allowing the disclosure of personal informa-

---

602, 605–06 (7th Cir. 2012), the Seventh Circuit analyzed a police department's practice of placing parking tickets containing personal information on parked cars as a redisclosure under § 2721(c). *See also Senne*, 695 F.3d at 610 (Posner, J., dissenting) ("The Illinois Department of Motor Vehicles, and its employees and contractors, are not defendants in this suit, but 'an authorized recipient of personal information' from the department is—the municipal police department that ticketed the plaintiff . . . ."). Furthermore, in this case, neither the parties nor any of the *amici curiae* argue the police department was not an "authorized recipient" of personal information under § 2721(c).

[6] The Newspaper also argues the City could have released the unredacted accident reports under 18 U.S.C. § 2721(b)(2), which provides that personal information may be disclosed

> [f]or use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.

The circuit court did not address § 2721(b)(2) in its decision. We likewise decline to address § 2721(b)(2) because we conclude release of the unredacted accident reports was otherwise permitted under § 2721(b)(14). *See State v. Castillo*, 213 Wis. 2d

tion from DMV records "[f]or any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety." 18 U.S.C. § 2721(b)(14). We agree with the circuit court that this exception permitted the police department to release unredacted copies of the accident reports requested by the Newspaper.[7]

¶ 35. Separate from the presumptive right of access that extends generally to government records via the public records law, Wisconsin law specifically mandates that law enforcement agencies provide the public with access to uniform traffic accident reports. WISCONSIN STAT. § 346.70(4)(f) provides that any person may "with proper care . . . and subject to such orders or regulations as the custodian thereof prescribes, examine or copy . . . uniform traffic accident reports . . . retained by local authorities, the state traffic patrol, or any other investigating law enforcement agency." The mandatory disclosure of accident reports, pursuant to § 346.70(4)(f), is a use specifically authorized under Wisconsin law and is related to the operation of a motor vehicle or public safety. Accordingly, a law enforcement agency's disclosure of personal information contained in accident reports is permissible under 18 U.S.C. § 2721(b)(14).

---

488, 492, 570 N.W.2d 44 (1997) (appellate courts not required to address every issue raised when one issue is dispositive).

[7] The Newspaper alternatively argues identifying information contained in accident reports is excluded from the DPPA's definition of personal information, and, consequently, accident reports are not subject to the DPPA in the first instance. We need not address this argument because, assuming for argument's sake that the accident reports at issue in this case contained personal information, as the DPPA defines that term, we nevertheless conclude 18 U.S.C. § 2721(b)(14) permitted the police department to release that information. *See Castillo*, 213 Wis. 2d at 492.

101

¶ 36. The City emphasizes that WIS. STAT. § 346.70(4)(f) states the disclosure of accident reports is subject to "such orders or regulations as the custodian thereof prescribes." However, the City does not explain the significance of this fact, as it relates to 18 U.S.C. § 2721(b)(14). That a records custodian may prescribe orders or regulations regarding the disclosure of accident reports does not change the fact that § 346.70(4)(f) is a specific state statute permitting their disclosure, or that the disclosure is related to the operation of a motor vehicle or public safety. No more is required for the disclosure to be permissible under § 2721(b)(14). We therefore affirm the circuit court's judgment, to the extent the court determined § 2721(b)(14) allowed the police department to release unredacted copies of the accident reports requested by the Newspaper.[8]

## II. 18 U.S.C. § 2721(b)(1)—the "agency functions" exception

▬▬

¶ 37. Given our conclusion that 18 U.S.C. § 2721(b)(14) allowed the police department to disclose unredacted copies of the accident reports requested by the Newspaper, the only remaining issue is whether § 2721(b)(1) permitted disclosure of any personal information contained in the incident report.

¶ 38. As discussed above, 18 U.S.C. § 2721(b)(1) permits disclosure of personal information from DMV

---

[8] Whether the police department's redaction of the personal information contained in the accident reports was proper pursuant to the public records law's balancing test is a separate issue that was not raised by the parties in the circuit court and has not been briefed on appeal. Accordingly, we do not address it.

records "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions." As a threshold matter, the parties dispute whether, when applying this exception in a case involving redisclosure of personal information by an authorized recipient (here, the police department), we should examine the authorized recipient's conduct or the requester's conduct. The Newspaper argues that, to determine whether the agency functions exception applies in this case, we must determine whether disclosure of the personal information requested by the Newspaper would serve any of the police department's functions. In contrast, the City argues we must determine how the Newspaper will use the information it requested, and we must then decide whether that use serves a government function.

¶ 39. In support of its argument, the City cites *Maracich* for the proposition that "the conduct of the requester must be examined" when determining whether any of the exceptions in 18 U.S.C. § 2721(b) permit the disclosure of personal information. In *Maracich*, the United States Supreme Court considered whether attorneys violated the DPPA by obtaining personal information from a state DMV and using it to solicit clients. *See Maracich*, 133 S. Ct. at 2196–98. In so doing, the Court examined the conduct of the attorneys who requested the information, rather than the conduct of the DMV that supplied the information. *See, e.g., id.* at 2199, 2203.

¶ 40. The City's reliance on *Maracich* is unpersuasive. *Maracich* did not interpret the agency functions exception. It dealt with 18 U.S.C. § 2721(b)(4), the DPPA exception authorizing disclosure of personal information "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding . . .,

103

including . . . investigation in anticipation of litigation." Thus, *Maracich* does not mandate a conclusion that, when applying the agency functions exception to the facts of this case, we must examine the Newspaper's conduct. Furthermore, *Senne*, which did interpret the agency functions exception, examined the conduct of a police department that disclosed personal information from DMV records, not the conduct of any entity to which the disclosure was made. *See Senne*, 695 F.3d at 608–09.[9]

¶ 41. We must therefore consider whether the police department's disclosure of the unredacted incident report requested by the Newspaper would have

---

[9] In a related argument, *amici curiae* Wisconsin County Mutual Insurance Corporation and Community Insurance Corporation assert the agency functions exception cannot apply in this case because the Newspaper is not a "government agency," and, consequently, the disclosure of personal information to the Newspaper cannot be "for use by any government agency . . . in carrying out its functions." *See* 18 U.S.C. § 2721(b)(1).

Based on the plain language of the DPPA, this argument appears to have merit. However, it is inconsistent with *Senne*, which analyzed a police department's redisclosure of personal information to the general public under the agency functions exception, even though it was not alleged that the police department disclosed the information to any government agency. *See supra*, ¶¶ 14–18. The operative issue in *Senne* was whether the police department's redisclosure to the general public served any of the police department's functions. Although we are not bound by *Senne*, we are mindful that by interpreting the DPPA in a manner contrary to *Senne* we would be exposing Wisconsin municipalities to inconsistent results in DPPA cases, depending on whether suit is brought in state or federal court. As a result, we conclude the fact the Newspaper is not a government agency is not determinative as to whether the redisclosure by the police department of information to the Newspaper was proper under the agency functions exception.

served any of the department's functions. *See* 18 U.S.C. § 2721(b)(1). The DPPA does not define the term "functions." When a statutory term is undefined, its ordinary and accepted meaning can be established by reference to a recognized dictionary. *Door Cty. Highway Dep't v. DILHR*, 137 Wis. 2d 280, 293–94, 404 N.W.2d 548 (Ct. App. 1987); *see also Shlahtichman v. 1–800 Contacts, Inc.*, 615 F.3d 794, 799 (7th Cir. 2010). Black's Law Dictionary defines a "function" as: (1) an "[a]ctivity that is appropriate to a particular business or profession"; or (2) an "[o]ffice; duty; the occupation of an office." BLACK'S LAW DICTIONARY 787 (10th ed. 2014). As an example, Black's states that it is a court's function to administer justice. *Id.* Another dictionary similarly defines the term "function" as "an activity or purpose natural to or intended for a person or thing." NEW OXFORD AMERICAN DICTIONARY 686–87 (2001).

¶ 42. The Newspaper observes that the public records law expressly states it is the public policy of this state that "all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them." WIS. STAT. § 19.31. To that end, the public records law states that "providing persons with such information is declared to be *an essential function* of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information." *Id.* (emphasis added). It is undisputed that the police department is an "authority" under the public records law, *see* WIS. STAT. § 19.32(1), and therefore shares the responsibility to carry out this "essential function." Accordingly, the Newspaper argues releasing records in response to public records requests is a "function" of the department, in that doing so is a

statutory duty of the department and is an activity appropriate to its business. *See* BLACK'S LAW DICTIONARY, *supra,* 787.

¶ 43. However, accepting the Newspaper's argument would lead to untenable results. If disclosure of personal information in response to public records requests constituted a "function" of government agencies, for purposes of the DPPA's agency functions exception, then any time an "authority" under the public records law received a public records request for personal information protected by the DPPA, it could disclose that information. This would include the Wisconsin DMV, which is an authority under the public records law. *See* WIS. STAT. § 19.32(1). Permitting the DMV to disclose personal information every time a public records request was made would eviscerate the protection provided by the DPPA, which was enacted to limit the circumstances in which state DMVs could disclose drivers' personal information in order to protect their safety and privacy. *See Maracich,* 133 S. Ct. at 2191; *Kehoe,* 421 F.3d at 1210. Consequently, interpreting the agency functions exception in the manner advocated by the Newspaper—that is, that the exception allows unfettered disclosure of personal information in response to public records requests—would be inconsistent with the manifest purpose of the DPPA and would therefore be unreasonable. *See Kalal,* 271 Wis. 2d 633, ¶ 46 (statutory language interpreted to avoid absurd or unreasonable results).

¶ 44. The Newspaper asserts that responding to public records requests is particularly crucial to the functioning of police departments. As the Newspaper observes, our supreme court has previously stated the principle of public oversight enshrined in the public records law is particularly important with respect to

106

"the process of police investigation." *Linzmeyer v. Forcey*, 2002 WI 84, ¶ 27, 254 Wis. 2d 306, 646 N.W.2d 811. The *Linzmeyer* court explained:

> The ability of police to investigate suspected crimes is an official responsibility of an executive government agency, and much like the ability to arrest, it represents a significant use of government personnel, time, and resources. The investigative process is one that, when used inappropriately, can be harassing or worse.

*Id.* (citation omitted).

¶ 45. The Newspaper argues redaction of personal information in police reports would prevent the public from verifying, and law enforcement from demonstrating, that criminal and traffic laws are fairly enforced against all persons. The attorney general's 2008 informal opinion similarly asserted that redacting names and addresses from routine law enforcement reports would "subvert the important governmental objective of facilitating public oversight of police investigations, impair public confidence in law enforcement activities, and . . . impede execution by law enforcement officers of their legitimate public duties and responsibilities." 2008 Informal Opinion, 2008 WL 1970575 at *7 (citations omitted). However, police departments are not the only authorities under the public records law that are charged with investigating violations of state laws. The redaction of records from many state agencies would similarly prevent the public from verifying that those agencies fairly enforced and applied the law. We are therefore not convinced police departments have a heightened need to comply with the public records law, as compared with other authorities, such that responding to public

records requests is uniquely a "function" of police departments for purposes of the DPPA's agency functions exception.

¶ 46. *Maracich* supports our conclusion that the agency functions exception to the DPPA cannot be interpreted to permit the disclosure of personal information based solely on the fact that a public records request has been made. In *Maracich*, the defendant attorneys obtained the plaintiffs' personal information from a state DMV pursuant to a state Freedom of Information Act (FOIA) request. *Maracich*, 133 S. Ct. at 2196. The defendants then used that personal information to send solicitation letters asking the plaintiffs to join class action lawsuits against a car dealership. *Id.* at 2197. The plaintiffs sued the defendants, arguing they had violated the DPPA both by obtaining the plaintiffs' personal information and by using it to send the letters. *Id.* The United States Supreme Court concluded the defendants' conduct was not permissible under 18 U.S.C. § 2721(b)(4), the DPPA exception allowing disclosure of personal information for use in connection with litigation. *Maracich*, 133 S. Ct. at 2196. The Court did not address the fact that the defendants had obtained the plaintiffs' personal information through a FOIA request. We can therefore infer from *Maracich* that a state FOIA or public records request is not, in and of itself, a sufficient basis to obtain personal information protected by the DPPA.[10]

---

[10] The plaintiffs in *Maracich v. Spears*, 133 S. Ct. 2191 (2013), did not sue the state DMV that released their personal information in response to the defendants' FOIA request.

108

¶ 47. The City argues that, under the circumstances presented by this case, the DPPA preempts the public records law. "Under the supremacy clause of the United States Constitution, state laws that obstruct or are contrary to laws of Congress made pursuant to the constitution are invalid." *Hazelton v. State Pers. Comm'n*, 178 Wis. 2d 776, 786, 505 N.W.2d 793 (Ct. App. 1993) (footnote omitted). To the extent there is an "actual conflict" between state and federal law, the federal law preempts the state law. *Id.* at 787. A conflict between federal and state law arises "when compliance with both the federal and state laws is a physical impossibility or when a state law is a barrier to the accomplishment and execution of Congress['] objectives and purposes." *Id.*

¶ 48. Although we agree with the City that an authority's obligation to respond to public records requests does not fall within the agency functions exception to the DPPA, we nevertheless conclude the City's preemption argument is misplaced. Under the circumstances, there is no conflict between the public records law and the DPPA. As noted above, Wis. Stat. § 19.36(1) states that "[a]ny record which is specifically exempted from disclosure by state or federal law . . . is exempt from disclosure under s. 19.35(1) . . ." Thus, in circumstances where the DPPA prohibits the release of personal information obtained from DMV records, the public records law exempts that information from disclosure. The two laws are therefore consistent.

¶ 49. We therefore reverse the circuit court's judgment, to the extent the court concluded disclosure of the incident report in response to the Newspaper's public records request was permissible under 18 U.S.C. § 2721(b)(1). Simply put, responding to a public

records request is not a "function" of the police department, for purposes of the agency functions exception to the DPPA. However, we question whether disclosure of the incident report requested by the Newspaper serves any of the police department's other functions, beyond mere compliance with the public records law. If so, disclosure of the unredacted incident report may nevertheless have been permissible under § 2721(b)(1). We therefore remand to the circuit court for the parties to present evidence and argument regarding that issue.

¶ 50. Finally, we observe that *amici curiae* the Wisconsin Newspaper Association and the Reporters Committee for Freedom of the Press argue the incident report requested by the Newspaper is not subject to the DPPA in the first instance because the redacted information in it was not obtained from DMV records but was, at most, verified using DMV records. At oral argument before our supreme court, the Newspaper similarly argued the DPPA does not apply to the incident report because the redacted information was merely verified using DMV records.

¶ 51. We conclude information that is obtained from another source and subsequently verified using DMV records is not subject to the DPPA, as long as, upon verification, the information is not substantively altered to conform to the DMV records. "The DPPA proscribes only the publication of personal information that has been obtained from motor vehicle records. The origin of the information is thus crucial to the illegality of its publication—the statute is agnostic to the dissemination of the very same information acquired from a lawful source." *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 949 (7th Cir. 2015), *cert. denied,* 136 S.

Ct. 689 (2015). In other words, the DPPA "permits publication of identical information so long as that information flows from a source other than driving records." *Id.* at 950.

¶ 52. Thus, if the redacted information in the incident report requested by the Newspaper was obtained from other sources and was merely verified using DMV records, it would not be subject to the DPPA. If, on the contrary, the information was obtained from DMV records, or was substantively altered upon verification in order to conform to DMV records, then it would be subject to the DPPA. Whether the redacted information was obtained from, or merely verified using, DMV records is a question of fact. The circuit court made no factual findings on this issue. Accordingly, on remand, we direct the court, as a threshold matter, to determine whether the redacted information in the incident report was obtained from DMV records or, if initially obtained from another source, was substantively altered upon verification to conform to information in the DMV records. If so, the information is subject to the DPPA, and the court should proceed to determine whether its disclosure would have served any function of the police department, beyond mere compliance with the public records law.

¶ 53. Neither party shall receive appellate costs. *See* WIS. STAT. RULE 809.25(1).

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.