STATE of Wisconsin EX REL. MILWAUKEE POLICE ASSO
CIATION, Bradley DeBraska, Petitioners-Respondents,

v.

Arthur JONES, Chief of Police, City of Milwaukee,
Respondent-Appellant.

Court of Appeals

*No. 98–3629. Submitted on briefs April 4, 2000.—Decided
June 13, 2000.*

## 2000 WI App 146

(Also reported in 615 N.W.2d 190.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Grant F. Langley*, city attorney, and *Susan E. Lappen*, assistant city attorney, of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Laurie A. Eggert* and *Jonathan Cermele*, of *Eggert Law Office, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. The City of Milwaukee and its Chief of Police, Arthur Jones (collectively, the " City"), appeal from the circuit court order granting the petition for writ of mandamus, filed by the Milwaukee Police Association and its president, Bradley DeBraska (collectively, the "MPA"). The circuit court order compels the City to produce its digital audio tape (DAT) recording of a 911 telephone call, pursuant to the

MPA's open records request.[1] The City argues that its production of an analog audio tape recording of the call satisfied the MPA's open records request and, therefore, that the circuit court erred in ordering it to produce the DAT recording.

¶ 2.　We conclude that the circuit court correctly determined that, because of the differences between a DAT and an analog recording, the City was required to produce the DAT recording for the MPA's examination and copying, in order to comply with the MPA's open records request. Accordingly, we affirm.

## I.　BACKGROUND

¶ 3.　Although a number of factual disputes emerged at the circuit court hearings, the facts relevant to resolution of this appeal are undisputed. On June 19, 1997, the MPA faxed a request to Chief Jones and the Open Records Division of the Milwaukee Police Department for a "[c]opy of the 911 call emanating from 3814 West Hemlock Street, Milwaukee, Wisconsin . . ., received on June 18, 1997 at 13:13:48 hours."[2] The fax specified that the requested copy was to be "in its original [form—]unaltered, unmodified and otherwise uncensored in any fashion."

---

[1] The circuit court order also stays the order and holds open the determination of attorneys' fees, pending appeal.

[2] According to the petition for writ of mandamus, the 911 call came from the home of a Milwaukee Police Department deputy inspector. The petition stated:

> No one was on the telephone line but, in the background, the 911 operator could hear a man and woman in a very heated argument. The woman was screaming that she was going to shoot the man. The caller eventually got on the line and identified himself . . . and stated that his wife, [the] [d]eputy [i]nspector . . ., had pulled a gun on him.

¶ 4.   Responding to the request, Chief Jones provided an analog tape recording which, the court found, "was as understandable to the naked adult human ear as the original DAT tape," and was "substantially as audible as the original DAT information maintained on the DAT tape." Counsel for the MPA, however, in an October 7, 1997 letter, advised the Open Records Division that he had submitted the tape to an expert who informed him that "the best spectrographic and waveform review and enhancement should be conducted on the original 911 tape."[3] Accordingly, counsel requested that the Open Records Division "allow [his] expert access to the . . . 911 tape for the purpose of nondestructive analysis and/or the making of a DAT and/or analog copy."

¶ 5.   After being advised by telephone that his October 7 request was denied, MPA counsel, in an October 28, 1997 letter, requested a written response, pursuant to WIS. STAT. § 19.35(4)(b) (1995–96),[4] which provides, in part, that "[i]f an authority denies a written request in whole or in part, the requester shall receive from the authority a written statement of the reasons for denying the written request." In his Octo-

---

[3] According to the MPA's petition for writ of mandamus and an accompanying affidavit, the MPA had submitted the tape for expert analysis to Steve Cain, a forensic audio/video tape examiner, "in order to enhance any background voices and to determine whether the tape had been altered or edited." The petition further explained that Cain had advised that "the background voice data was degraded, both because of it being a copy and because of overlapping, simultaneous speech," and that the tape had "some suspicious record event anomalies."

[4] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

ber 28 letter, counsel also reiterated and explained his request, stating, in part:

> The purpose of my request for access [to the 911 tape] is to allow my expert to make a digital recording of the calls for the purpose of conducting a spectrographic and waveform review and enhancement of the conversations. In order to make this recording, my expert would simply unplug the cassette recorder currently plugged in to your 911 recorder, plug in his digital and professional analog recorders and simply transfer the audio information from one tape (the 911 tape) to another tape. Nothing in this process will cause any damage to the 911 tape, the 911 recorder, or auxiliary equipment. The recording process will be no more disruptive than the disruption made when the Milwaukee Police Department makes a recording of a 911 call using its own recording equipment.

¶ 6.    By letter of November 4, 1997, Chief Jones denied the requested access for the MPA's expert. Chief Jones maintained that, by providing "a copy of the . . . 911 transmission" as originally requested, his department had complied with the statutory requirement to provide "a copy of the tape recording substantially as audible as the original." *See* WIS. STAT. § 19.35(1)(c).[5]

¶ 7.    Challenging the basis for Chief Jones's denial, the MPA petitioned for a writ of mandamus on

---

[5] WISCONSIN STAT. § 19.35(1)(c), in full, provides:

> Except as otherwise provided by law, any requester has a right to receive from an authority having custody of a record which is in the form of a comprehensible audio tape recording a copy of the tape recording substantially as audible as the original. The authority may instead provide a transcript of the recording to the requester if he or she requests.

December 22, 1997. *See* WIS. STAT. § 19.37(1)(a).[6] The petition stated, in part:

> The reason given for [Chief Jones's] refusal to permit petitioners to inspect and copy the audio recording requested is inadequate for the following reasons:
>
> a. [Chief Jones] has refused to allow inspection by the petitioners' expert, in violation of sec. 19.35(1), Wis. Stats., which provides that "any requester has a right to *inspect* any record." (Emphasis added).
>
> b. The original 911 call was recorded digitally; the recording provided to the petitioners was in analog format. Thus, the petitioners did not receive a copy of the recording as required by sec. 19.35(1)(c)[,] Wis. Stats.
>
> c. The recording provided to the petitioners, according to the petitioners' expert, "has suspicious record event anomalies", indicating that the petitioners may not have received the entire recording. Thus, it is not certain that [Chief Jones] has provided the petitioners with a copy of the entire record, as required by sec. 19.35(1)(c), Wis. Stats. The only means of ascertaining the authenticity of the record is to examine either the actual recording or a digital copy of the recording.

---

[6] WISCONSIN STAT. § 19.37 provides, in relevant part:

**Enforcement and penalties. (1)** MANDAMUS. If an authority withholds a record or a part of a record or delays granting access to a record or part of a record after a written request for disclosure is made . . . .

(a) The requester may bring an action for mandamus asking a court to order release of the record. The court may permit the parties or their attorneys to have access to the requested record under restrictions or protective orders as the court deems appropriate.

Also on December 22, 1997, the circuit court ordered an alternative writ of mandamus.[7] On January 12, 1998, Chief Jones filed a return to the writ and moved to quash it.

¶ 8. The circuit court conducted extensive hearings devoted, in substantial part, to gaining a precise understanding of the differences between analog and DAT recording formats and whether it would be possible to generate a DAT copy of the original DAT recording created by the 911 system. On one of the hearing dates, the court convened at the Communications Bureau of the Milwaukee Police Department, where the court, counsel for the parties, the MPA's expert, and police personnel listened to the original 911 DAT recording as well as the analog copy provided in response to the MPA's original request. They also listened to another analog copy that was made during that day's hearing. The court also considered testimony from the MPA's expert, as well as affidavits from both the MPA's expert and a communication recording systems team leader for Dictaphone, Inc., the manufacturer of the 911 recording system.

¶ 9. The court concluded that Chief Jones, in providing an analog copy, had complied with the MPA's original request, consistent with WIS. STAT. § 19.35(1)(c) which provides for "a right to receive . . . a

---

[7] The alternative writ of mandamus was issued by Judge Victor Manian. BLACK'S LAW DICTIONARY (7th ed. 1999), defining "mandamus" as "[a] writ issued by a superior court to compel a lower court or a government officer to perform mandatory or purely ministerial duties correctly," *id.* at 973, goes on to define "alternative mandamus" as "[a] mandamus issued upon the first application for relief, commanding the defendant either to perform the act demanded or to appear before the court at a specified time to show cause for not performing it," *id.*

copy of the tape recording substantially as audible as the original." The court also found, however, "that the Dictaphone Prolog Guardian system used by the Milwaukee Police Department [for its 911 system] includes both mechanical and computer components and that the machinery runs computer programs within the [Prolog/Guardian system] machinery itself" and, further, "that the material produced as a result of the computer program is the DAT tape." The court found that "the DAT is a separate record in addition to it being an audio tape." The court ultimately concluded, therefore, that Chief Jones had failed to comply with what the court termed the MPA's "subsequently enhanced" request for access to the DAT recording, under WIS. STAT. § 19.36(4) which provides that "the material used as input for a computer program or the material produced as a product of the computer program is subject to the right of examination and copying."[8] Accordingly, the court then granted the petition for writ of mandamus but stayed the order pending this appeal.

## II.   DISCUSSION

¶ 10.   The City argues that the circuit court erred "by determining that Chief Arthur Jones . . . violated the open records law, when the Chief had provided . . . [an analog] cassette tape copy of telephone calls captured on the Milwaukee Police Department's 911

---

[8] WISCONSIN STAT. § 19.36(4), in full, provides:

COMPUTER PROGRAMS AND DATA. A computer program, as defined in s. 16.971(4)(c), is not subject to examination or copying under s. 19.35(1), but the material used as input for a computer program or the material produced as a product of the computer program is subject to the right of examination and copying, except as otherwise provided in s. 19.35 or this section.

recording system, which were [sic] substantially as audible as the original audio recordings." We, like the circuit court, acknowledge that under WIS. STAT. § 19.35(1)(c), Chief Jones, by providing an analog copy, complied with the MPA's original request. We also agree with the circuit court, however, that under WIS. STAT. § 19.36(4), production of the analog copy did not satisfy the MPA's "subsequently enhanced" request for "examination and copying" of the original.

■

¶ 11.   Where a circuit court, determining a petition for writ of mandamas, has interpreted Wisconsin's open records law, *see* WIS. STAT. §§ 19.31 through 19.39, and has applied that law to undisputed facts, we review the circuit court's decision *de novo. See State ex rel. Schultz v. Wellens,* 208 Wis. 2d 574, 576, 561 N.W.2d 775 (Ct. App. 1997). We do so ever mindful of the legislature's declaration of policy that "[WIS. STAT. §§ ] 19.32 to 19.37 shall be construed *in every instance* with a presumption of complete public access, consistent with the conduct of governmental business." *See* WIS. STAT. § 19.31 (emphasis added).

¶ 12.   Much of the City's argument concentrates on whether the analog copy it produced was "substantially as audible as the original" and, therefore, in compliance with the MPA's request under WIS. STAT. § 19.35(1)(c). That, however, is not the issue on appeal. It is undisputed that, as the circuit court said, the analog copy was "substantially as audible as the original" and, therefore, under § 19.35(1)(c), it satisfied the MPA's original request.

¶ 13.   The City does not challenge the circuit court's determination that the MPA counsel's correspondence with the Open Records Division constituted a "subsequently enhanced" request of a different

nature—a request for access to the original DAT recording—precisely because the analog copy could not be analyzed to gain the information that apparently was central to the MPA's concern. Thus, the issue on appeal is not whether Chief Jones's production of the analog copy complied with the MPA's original request. The issue is whether the analog copy satisfied the MPA's "subsequently enhanced" request. We, like the circuit court, conclude that it did not.

¶ 14.   On appeal, the City does not challenge the circuit court's factual findings regarding the differences between the analog and DAT formats. Moreover, the City does not dispute the MPA's contention that its expert, with a DAT copy, would be able to detect and enhance background voices, which would not be possible using only an analog copy. Instead, the City complains that "the Milwaukee Police Department does not have the equipment necessary to make a digital 'dub' of a digital tape," and that "[t]he open records law does not require a records custodian to offer a variety of mechanisms or media for providing copies of records." Once again, however, the City is arguing a nonissue.

¶ 15.   The circuit court acknowledged that the MPA's expert and Dictaphone's communication recording systems team leader differed as to whether a digital copy could be made from the original DAT recording. But, as the court explained, that was a factual dispute with no bearing on the court's legal decision, because the MPA's expert maintained that he would be able to make the needed copy.

> [The MPA would] merely [have] to have its agent Mr. Cain come to a conference room at the location of Chief Jones's choice and take the DAT tape which

is now being preserved and otherwise in the normal course of business would be destroyed through reuse and simply drop that tape into Mr. Cain's own portable machine and Mr. Cain can try to run his copy as he claims he can do.

Further, the court specifically stated, "The [MPA] is entitled to the right of copying, but the Department is not required to utilize any equipment which is special equipment for the purpose of copying."

¶ 16. When the City finally focuses on WIS. STAT. § 19.36(4), it takes an untenable position. The City maintains that the statute "establishes that record requesters have no right to copies of computer programs, but rather may *request the information* which is inputted into a computer for processing." (Emphasis added.) That statement, however, is misleading; it ignores the remainder of the content of § 19.36(4).

■

¶ 17. As already noted, WIS. STAT. § 19.36(4) provides that "the material used as input for a computer program or *the material produced as a product of the computer program is subject to the right of examination and copying*." (Emphasis added.) Neither the City nor the MPA suggests that the statute is ambiguous in any way. In considering the provisions of the open records law we, as always, "must interpret clear and unambiguous statutes to effectuate the 'express intention of the legislature by giving the language its ordinary meaning.'" *Schultz*, 208 Wis. 2d at 578. Clearly and unambiguously, the statute allows for exactly what the MPA has requested—access to the source "material" and the opportunity for "examination and copying."

¶ 18. Nevertheless, the City argues that "the material used as input" under WIS. STAT. § 19.36(4) is "sound waves made by the oral communications of a

caller to either telecommunicators or dispatchers who worked with the . . . 911 system." Therefore, the City continues, because the "oral communication was not originally communicated in any type of digital format" and the "information was communicated through the use of the human mouth, tongue, vocal cords, and other 'hardware' of the human body which is used for speech," the DAT recording really is not the source material subject to examination under § 19.36(4). However, to accept this argument, a tortured one at best, would be to violate the spirit as well as the letter of the open records law.

¶ 19.   "There is a presumption that the public has the right to inspect public records unless an exception is found." *State ex rel. Richards v. Foust*, 165 Wis. 2d 429, 433, 477 N.W.2d 608 (1991). Under WIS. STAT. § 19.32(2):

> "Record" means *any material* on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, *regardless of physical form or characteristics*, which has been created or is being kept by an authority. "Record" includes, but is not limited to, handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (*including computer tapes*), computer printouts and optical disks.

(Emphases added.)[9] As technology advances and computer systems are refined, it would be sadly ironic if

---

[9] The City does not dispute the MPA's summary of the specific technology involved in this case. The MPA writes:

The 911-call in question was recorded on a computer tape. The system used by the MPD to record 911-calls is a Labtec Computer System LCS 1000. It has a hard drive on which 911-calls are stored. The hard drive is the "initial source of recorded medium." It has

courts could disable Wisconsin's open records law by limiting its reach. *See Schultz*, 208 Wis. 2d at 578 ("[W]e must construe statutes to avoid absurd results."). After all, as modern society rapidly adds to its sophisticated methods of data collection, it inevitably filters "the human mouth, tongue, [and] vocal cords" through computer systems. A potent open records law must remain open to technological advances so that its statutory terms remain true to the law's intent.

*By the Court.*—Order affirmed.

software. The computer is used to search DAT tapes for specific 911-calls. The DAT tape contains encoding which allows the search of the tape for conversations made on a particular date and time. There is nothing in the record to indicate that the analog tape has the same encoding.

A digital recording converts sound waves into numbers and stores them for later reproduction. The digital data is "expressed in binary notation (a series of 'on-off' conditions that represent the digits '1' and '0')." The same "binary notation" used in DAT recordings is also used by computers to store information. The DAT at issue in this case contains data not found on the analog version, namely[:] the digitized binary notations similar to those found on computer tapes. The digital recording contained on the DAT tape in question is therefore appropriately classified as a "computer tape" and analogous to the tapes commonly used in "Zip-drives" to backup computer data.

(Record references and citations omitted.) Thus, the MPA maintains, "[a]n analog recording (such as that provided in this case) of a DAT recording does not contain the same electronic 'signals' as the original DAT recording."