KESSLER, J.
*195 ¶1 Media Placement Services (Media Placement) appeals the summary judgment order dismissing its mandamus action to access free motor vehicle accident reports from the Department of Transportation (DOT) using the DOT's web portal. We affirm.
BACKGROUND
¶2 The following facts are not in dispute. Media Placement is a Louisiana-based company with an interest in motor vehicle accident data (accident reports) from the City of Milwaukee. For several years, Media Placement representatives would visit the Milwaukee Police Department's Third *227 District Police Station, request accident reports from particular dates, and inspect those reports free of charge. In June 2013, however, the Milwaukee Police Department suspended the practice of allowing Media Placement to view unredacted accident reports, citing privacy concerns pursuant to the Federal Drivers Policy and Protection Act. Media Placement continued to request accident reports from the Milwaukee Police Department, but was ultimately informed that the DOT became the custodian of accident reports and that subsequent requests must be made through the DOT.
¶3 In August 2014, counsel for Media Placement submitted a written request to the DOT for City of Milwaukee accident reports from certain dates. Through phone calls and emails, the DOT informed Media Placement of its access options. The DOT offers the following options to requesters seeking accident reports:
*196 • Online requests, through the DOT's website, for individual accident reports. The website requires requesters to know either an accident number, a document number, or both a driver's license number and accident date. A $5.00 furnishing fee, plus a $1.00 convenience fee, is required for each report.
• Written, email, or phone requests for accident reports in which requesters can use more general search criteria, such as "all accident reports" from a particular date or location. The DOT generates the data, and for a fee, provides the data to the requester when the data is available.
• A weekly subscription service, in which the DOT contracts with high-volume requesters to provide bulk weekly data from accident reports. The DOT charges a $250.00 weekly fee for the subscription service.
¶4 Media Placement filed the mandamus action underlying this appeal. As related to this appeal, Media Placement argued that the DOT "failed and [is] still failing to provide [Media Placement] with access for the purpose of inspection without charge to Milwaukee Police Department accident reports," contrary to Wisconsin open records law.[1] The mandamus action also argued that the DOT is "not authorized to charge a fee of $6.00 to inspect [Milwaukee Police Department] accident reports online." Media Placement asked the circuit court to "compel[ ] [the DOT] to permit ... [Media Placement] to inspect Wisconsin motor vehicle accident reports that originated in the City of Milwaukee upon request and without charge."
*197 ¶5 Both parties moved for summary judgment. Media Placement argued that the DOT unfairly limited the public's access to accident report data because requesters using the DOT website must know specific search criteria and that the DOT was not authorized to charge for access to accident reports.[2] The DOT countered that it did not limit the public's access to either individual or bulk accident reports because it provides multiple methods of access, including a weekly subscription service for high-volume requesters such as Media Placement. The DOT also argued that pursuant to *228 WIS. STAT. § 343.24(2m) (2015-16),[3] it was authorized to charge a fee for online access to individual accident reports. The circuit court granted summary judgment in favor of the DOT and denied Media Placement's motion. This appeal follows.
DISCUSSION
¶6 On appeal, Media Placement's arguments focus primarily on its assertions that the DOT improperly limits access to individual accident reports by requiring an online requester to know specific information and that the DOT is not authorized to charge for those reports. A breakdown of Media Placement's arguments, however, shows that Media Placement is actually challenging its inability to access individual accident reports: (1) in bulk, (2) online, (3) for free, and (4) using general search information such as dates and locations. In short, Media Placement wants access to high volumes of individual accident reports using *198 the DOT's online database and does not want to pay for the reports. In asserting its arguments, Media Placement extensively discusses Wisconsin's open records law and challenges the applicability of WIS. STAT. § 343.24(2m) -the statute authorizing the DOT to charge a fee for furnishing certain motor vehicle records. We conclude that Media Placement is not entitled to free access to the DOT's database because both Wisconsin open records law and statutory authority permit the DOT to charge access fees for certain records and because case law has held that the right to access records does not extend to the right to access databases. See WIREdata, Inc. v. Village of Sussex , 2008 WI 69, 310 Wis. 2d 397, 751 N.W.2d 736.
Standard of Review
¶7 " 'We independently review whether the circuit court correctly granted summary judgment' " to the DOT. See Journal Times v. Police & Fire Comm'rs Bd. , 2015 WI 56, ¶ 42, 362 Wis. 2d 577, 866 N.W.2d 563 (citation omitted). "Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. (citation and quotation marks omitted).
¶8 "A writ of mandamus may be used to compel public officers to perform duties arising out of their office and presently due to be performed." Pasko v. City of Milwaukee , 2002 WI 33, ¶ 24, 252 Wis. 2d 1, 643 N.W.2d 72 (citation and quotation marks omitted). "In *199 order for a writ of mandamus to be issued, four prerequisites must be satisfied: '(1) a clear legal right; (2) a positive and plain duty; (3) substantial damages; and (4) no other adequate remedy at law.' " Id. (citation omitted).
¶9 "Where a circuit court, determining a petition for writ of mandam[u]s, has interpreted Wisconsin's open records law, see WIS. STAT. §§ 19.31 through 19.39, and has applied that law to undisputed facts, we review the circuit court's decision de novo ." State ex rel. Milwaukee Police Ass'n v. Jones , 2000 WI App 146, ¶ 11, 237 Wis. 2d 840, 615 N.W.2d 190. We do so ever mindful of the legislature's declaration of policy that the open records law must " 'be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental *229 business.' " Id. (citing Sec. 19.31 ) (emphasis omitted).
Wisconsin Open Records Law
¶10 "[T]he legislature has created a statutory presumption that all government records are public. [ WISCONSIN ] STAT. § 19.31 provides that §§ 19.32 to 19.37 (the Wisconsin [open] records law) 'shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.' " Portage Daily Register v. Columbia Cty. Sheriff's Dep't , 2008 WI App 30, ¶ 10, 308 Wis. 2d 357, 746 N.W.2d 525 (citing Wisconsin open records law). The presumption is not absolute. "This strong presumption of public *200 access may give way to statutory or specified common law exceptions, or, if there is an overriding public interest in keeping the record confidential." Id. , ¶ 11.
¶11 In addition to statutory or common law exceptions to disclosure, the open records law defers to other statutes that specifically authorize records custodians to charge fees for records that differ from the fees that the open records law itself authorizes. WISCONSIN STAT. § 19.35(3)(a) states: "An authority may impose a fee upon the requester of a copy of a record which may not exceed the actual, necessary and direct cost of reproduction and transcription of the record, unless a fee is otherwise specifically established or authorized to be established by law." "As a result, the authority may not make a profit on its response to an open records request." WIREdata , 310 Wis. 2d 397, ¶ 103, 751 N.W.2d 736. However, "an authority under the open records law 'is not required, by itself, to bear the costs of producing documents in response to [an open records law] request.' " Id. , ¶ 104 (citation omitted). "[U]nder WIS. STAT. § 19.35(3), an authority may impose a fee on the records requester 'for the location, reproduction or photographic processing of the requested records, but the fee may not exceed the actual, necessary and direct cost of complying with the open records requests.' " WIREdata , 310 Wis. 2d 397, ¶ 104, 751 N.W.2d 736 (citation omitted).
¶12 The DOT receives approximately 520 accident reports per business day, or about 2600 per week. It also receives over 34,000 requests for reports.[4] The legislature obviously recognized the cost of record *201 maintenance and reproduction for agencies required to comply with open records requests, such as the DOT. Accordingly, it is clear that the Wisconsin open records law authorizes records custodians to charge location, reproduction and processing fees pursuant to a records request.
WISCONSIN STAT. § 343.24(2m)
¶13 Having established that Wisconsin open records law permits a records custodian to charge certain fees, we turn to WIS. STAT. § 343.24(2m), which deals specifically with the DOT. The statute authorizes the DOT to charge $5.00 for "furnish[ing]" particular records:
If the department, in maintaining a computerized operating record system, makes copies of its operating record file database, or a portion thereof, on computer tape or other electronic media, copies of the tape or media may be furnished to any person on request. The *230 department may also furnish to any person upon request records on computer tape or other electronic media that contain information from files of uniform traffic citations or motor vehicle accidents and that were produced for or developed by the department for purposes related to maintenance of the operating record file database. The department shall charge a fee of $5 for each file of vehicle operators' records contained in the tape or media. The department shall charge a fee of not more than $5 for each file of uniform traffic citations or motor vehicle accidents contained in the tape or media . Nothing in this subsection requires the department to produce records of particular files or data in a particular format except as those records or data are made by the department for its purposes.
(Emphasis added.)
*202 ¶14 The parties dispute the records to which the statute applies. Media Placement contends that the statute does not authorize the DOT to charge for the inspection of accident reports; rather, it argues that the statute applies to making copies of an individual's operating record. The plain language of the statute says otherwise.
¶15 "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).
¶16 Although WIS. STAT. § 343.24(2m) governs individual operating records, the plain language of the statute also addresses accident reports. The statute states that the DOT shall charge a fee of not more than $5.00 for each file of uniform traffic citations or motor vehicle accidents. The statute does not define "file ... of motor vehicle accidents" or "accident reports," thus requiring us to apply the ordinary meaning of the terms. See Mared Indus., Inc. v. Mansfield , 2005 WI 5, ¶ 32, 277 Wis. 2d 350, 690 N.W.2d 835 (when a statute does not define a term, we examine the ordinary meaning of that term, and rely on dictionary definitions for undefined, non-technical terms). We see nothing in the relevant statutes indicating that the "files ... of motor vehicle accidents" addressed in the statute are different from the "accident reports" that Media Placement seeks. Those reports are submitted to the DOT in conjunction with operators' records for various considerations. See WIS. STAT. § 343.23. Some relevant information from accident reports, such as the date, accident number, and severity of the accident are *203 also included in an individual's operating record. Accordingly, it is apparent that accident reports are, at least in part, "produced for ... the department for purposes related to the maintenance of the operating record file database." See Sec. 343.24(2m). Thus, § 343.24(2m) provides a separate statutory authority to charge for both operator records as well as accident reports.
¶17 The statute also does not distinguish between inspecting reports and making copies of reports, as Media Placement contends. Rather, the statute permits a $5.00 "furnish[ing]" fee. Applying the standard meaning of the term "furnish," which means to "provide with what is needed,"[5] it is clear that when a requester gains access to an accident record, that record has been "furnish[ed]" by the DOT, as the requester has been "provide[d]" with what was sought. Accordingly, WIS. STAT. § 343.24(2m) grants the DOT authority to *231 charge parties for inspecting accident reports.
Access to the DOT's Database
¶18 Having established that both WIS. STAT. § 19.35 (open records law) and WIS. STAT. § 343.24(2m) authorize the DOT to charge a furnishing fee to those seeking access to accident reports, we turn now to the issue of whether Media Placement is entitled to high volumes of those accident reports using the DOT's web portal. In other words, whether Media Placement is entitled to aggregate reports using the DOT's database.
¶19 The Wisconsin Supreme Court addressed a similar issue in WIREdata, Inc. v. Village of Sussex . In that case, WIREdata made a series of open records *204 requests asking three municipalities to provide information about its property assessments. Id. , 310 Wis. 2d 397, ¶ 6, 751 N.W.2d 736. WIREdata intended to market and sell the information to assist real estate agents and brokers. Id. WIREdata asked two of the municipalities to provide the data in an "electronic/digital" format. Id. , ¶ 7. Each of the municipalities contracted with independent contractor assessors to complete their property assessments. Id. The companies maintained the raw property data in a computer software program. Id. , ¶¶ 9-10, 91. WIREdata also requested the property records from the independent contractor assessors. Id ., ¶ 8. WIREdata requested that the records be provided "to the company in the format that was created and maintained by those independent contractor assessors in a computerized database." Id. , ¶ 8. The municipalities provided WIREdata with the requested data in a PDF format and charged fees. Id. WIREdata filed a mandamus action seeking access to the databases of the independent contractor assessors. Id. , ¶¶ 6-8.
¶20 Among the multiple issues before the supreme court was the question of whether the municipalities violated Wisconsin's open records law when it provided WIREdata with its requested information in PDF format, rather than granting WIREdata access to the assessor databases. The supreme court found that the municipalities complied with the open records law and rejected WIREdata's contention that "requesters must be given access to an authority's electronic databases to examine them, extract information from them, or copy them." Id. , ¶ 97. The court concluded that "allowing requesters such direct access to the electronic databases of an authority would pose substantial risks. For example, confidential data that is not *205 subject to disclosure under the open records law might be viewed or copied. Also, the authority's database might be damaged, either inadvertently or intentionally." Id. Thus, the court was "satisfied that it is sufficient for the purposes of the open records law for an authority, as here, to provide a copy of the relevant data in an appropriate format." Id.
¶21 With these principles in mind, we too are satisfied that the DOT provides requesters, such as Media Placement, sufficient access to accident reports-both individual and in bulk-without granting access to its database. Indeed, there is no real question about whether Media Placement has access to the reports it seeks. It is undisputed that Media Placement, like any other member of the public, may search the DOT's web portal if certain facts are known. If those facts are not known, requesters may contact the DOT via email, mail, or phone and request data based on whatever information is known to the requester, such as date ranges, specific dates, or locations. The DOT's website provides *232 the appropriate contact information.[6] For high-volume requesters, such as a business like Media Placement, the DOT offers a weekly subscription service providing relevant crash data for a cost of $250.00 per week.[7] As stated, there are approximately 2600 reportable accidents in Wisconsin per week.
¶22 Media Placement is advocating for free and immediate access to bulk data via the DOT's database.
*206 As the supreme court has already decided, a requester is not entitled to its preferred method of access when the accident reports are otherwise sufficiently available. See id. , ¶ 97. Moreover, granting Media Placement-or any member of the public for that matter-database access poses potential security risks. Indeed, only a handful of DOT employees are authorized to access accident reports in the DOT database using the necessary software due to safety and privacy concerns.
¶23 For the foregoing reasons, we conclude that the DOT is statutorily authorized to charge requesters for access to motor vehicle accident reports and that the DOT does not impermissibly limit access to accident reports. In short, the DOT is in compliance with Wisconsin's open records law. We affirm the circuit court.
By the Court. -Order affirmed.

The initial mandamus action also named the Milwaukee Police Department; however, following our decision in New Richmond News v. City of New Richmond , 2016 WI App 43, 370 Wis. 2d 75, 881 N.W.2d 339, the parties stipulated to the Milwaukee Police Department's dismissal from this action.

A requester using the DOT's website must enter either an accident number, a document number, or both a driver's license number and an accident date.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

We take these statistics from the parties' stipulated facts. The data reflects the DOT's 2015 statistics.

See Furnish , https://www.merriam-webster.com/dictionary/furnish.

See State of Wisconsin Department of Transportation, Purchase Crash Reports, https://app.wi.gov/crashreports; see also http://wisconsindot.gov/Pages/home.aspx.

We have already established that Wisconsin open records law permits record custodians to charge access fees.