GUNDRUM, J.
*149 ¶1 Scott Krug appeals from an order granting mandamus relief to Bill Lueders and ordering Krug to produce "electronic copies" of records Lueders sought through an open records request. We affirm.
Background
¶2 On June 21, 2016, Lueders e-mailed Krug a request to review, under Wisconsin's open records law,
any and all citizen correspondence , including phone records, sent and/or received by Representative Krug or his/her staff, beginning January 1 through and including April 8, 2016, related to the following search terms:
AB600/SB459; AB603/SB477; AB804/SB654; AB874/SB239; stewardship fund; DNR scientists; state parks; conservation staff; high capacity wells; groundwater; lakeshore dredging; navigable waters; wetlands; water rights.
In response to this request, Krug's office made, as related to this case, paper printouts from responsive e-mails and arranged for Lueders to inspect and/or purchase copies of these printouts. On July 19, 2016, Lueders inspected the printouts and obtained copies of some of them. On July 21, 2016, Lueders e-mailed Krug requesting "to receive the records in electronic form." Lueders clarified he was requesting:
*150 access to all emails received by your office is [sic] response to proposed changes to the state's water laws, from Jan. 1, 2016 to Feb. 29, 2016. This request *900 is not for printed copies of these records; it is for the records in electronic form, as an email folder, or on a flash drive or CD.
¶3 Citing WIS. STAT. § 19.35(1)(b) (2017-18),[1] Krug declined to provide Lueders with a copy of the e-mails in electronic form. That statutory provision states:
Except as otherwise provided by law, any requester has a right to inspect a record and to make or receive a copy of a record. If a requester appears personally to request a copy of a record that permits copying, the authority having custody of the record may, at its option, permit the requester to copy the record or provide the requester with a copy substantially as readable as the original.
Id. (emphasis added). Krug expressed to Lueders that the paper printouts he had previously provided for Lueders' inspection and copying satisfied the requirements of the open records law because they were "substantially as readable" as the e-mails themselves.
¶4 Lueders subsequently filed this mandamus action seeking an order directing Krug to provide him with an "electronic, native copy of the requested records." Both parties moved for summary judgment and agreed at a hearing on the motion that no material facts were in dispute. The circuit court granted Lueders' motion and denied Krug's. Krug appeals.
*151 Discussion
¶5 Krug rests his appeal on his reading of WIS. STAT. § 19.35(1)(b), which he claims requires him to provide Lueders with "nothing more" than "copies of records that [were] 'substantially as readable' as the original." This argument calls upon us to interpret this statutory provision and apply it to the undisputed facts.
Where a circuit court, determining a petition for writ of mandamus, has interpreted Wisconsin's open records law ... and has applied that law to undisputed facts, we review the circuit court's decision de novo .... We do so ever mindful of the legislature's declaration of policy that "[ WIS. STAT. §§] 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business."
State ex rel. Milwaukee Police Ass'n v. Jones , 2000 WI App 146, ¶11, 237 Wis. 2d 840, 615 N.W.2d 190 (alteration in original; citation omitted). We likewise review independently a circuit court's decision on summary judgment. Stone v. Board of Regents of the Univ. of Wis. Sys. , 2007 WI App 223, ¶9, 305 Wis. 2d 679, 741 N.W.2d 774.
¶6 Krug's appeal falters right out of the gate due to his erroneous reading of WIS. STAT. § 19.35(1)(b). The second sentence of this provision, upon which Krug hangs his entire appeal, reads: "If a requester appears personally to request a copy of a record ..., the authority having custody of the record may, at its option, permit the requester to copy the record or provide the requester with a copy substantially as *152 readable as the original." Id. (emphasis added). The plain reading of this sentence dictates that the language "the authority having custody of the record may, at its option, permit the requester to copy the record or provide the requester with a copy substantially as readable as the original" only comes into play "[i ]f a requester appears personally to request a copy of a record." Id. (emphasis added). The legislature chose to include this clause, and we are bound by that choice. Because there is no dispute Lueders did not "appear[ ] personally" *901 to request the records he sought with either his first or his second, enhanced request, but instead made both requests by e-mail, the "provid[ing] the requester with a copy substantially as readable as the original" language simply does not apply at all. To hold otherwise, would require us to ignore the first clause of that sentence, which we are not at liberty to do. See Grebner v. Schiebel , 2001 WI App 17, ¶11, 240 Wis. 2d 551, 624 N.W.2d 892 (2000) ("When interpreting a statute, it must be read so every portion of the statute is given meaning.").
¶7 Though the text is so plain we need not expound upon it, we nonetheless note that this second sentence of WIS. STAT. § 19.35(1)(b) previously read: "If a requester requests a copy of the record , the authority having custody of the record may, at its option, permit the requester to photocopy the record or provide the requester with a copy substantially as readable as the original." 1991 Wis. Act 269, § 26sm (emphasis added). The legislature amended the first clause of this sentence to add "appears personally"-i.e., "[i]f a requester appears personally to request a copy of a record." See State ex rel. Borzych v. Paluszcyk , 201 Wis. 2d 523, 527, 549 N.W.2d 253 (Ct. App. 1996) (emphasis added). Thus, the legislature very specifically *153 changed the language from applying to any circumstance in which a requester requests a copy of a record to applying only to the circumstance in which the requester appears in person to request a copy of a record. Without question the legislature did not intend for this second sentence to apply to situations like that in the case now before us.
¶8 However, the first sentence of WIS. STAT. § 19.35(1)(b) -"[e]xcept as otherwise provided by law, any requester has a right to inspect a record and to make or receive a copy of a record"-does apply. Considering that sentence, the question remains as to whether Lueders' enhanced open records request of July 21, 2016, entitled him to receive an electronic copy of the e-mails themselves, or whether the enhanced request had already been satisfied by Krug previously affording Lueders access to the paper printouts from the e-mails. On this question, we see substantial similarities between this case and Jones , 237 Wis. 2d 840, 615 N.W.2d 190.
¶9 In Jones , the Milwaukee Police Association (MPA) made an open records request of the Milwaukee Police Department for a copy of a particular 911 call. Id. , ¶3. In response, the police chief provided an analog tape recording of the call, which originally had been recorded as a digital audio tape. Id. , ¶4. The MPA followed up with a subsequent request that its expert be permitted "to make a digital recording of the calls for the purpose of conducting a spectrographic and waveform review and enhancement of the conversations." Id. , ¶5 (emphasis added). The chief denied the request on the basis that he had satisfied relevant open records law requirements by previously providing the analog tape recording. Id. , ¶6. The MPA petitioned the circuit court for a writ of mandamus, asserting *154 that it did not receive a "copy" of the recording because the original 911 call was recorded digitally and the analog recording the chief provided had, according to the MPA's expert,
"suspicious record event anomalies", indicating that the [MPA] may not have received the entire recording. Thus, it is not certain that [the chief] has provided the petitioners with a copy of the entire record, as required by [ WIS. STAT. §] 19.35(1)(c).... The only means of ascertaining the authenticity of the record is to examine either the actual recording or a digital copy of the recording.
Jones , 237 Wis. 2d 840, ¶7, 615 N.W.2d 190.
*902 ¶10 On appeal, we determined the chief satisfied the MPA's initial open records request by providing the analog tape recording, however, he failed to satisfy the MPA's "subsequently enhanced" request to examine and copy the original digital recording. Id. , ¶10. The enhanced request, we noted, was "of a different nature-a request for access to the original [digital] recording-precisely because the analog [tape recording] could not be analyzed to gain the information that apparently was central to the MPA's concern." Id. , ¶13. We accepted the findings of the circuit court as to "the differences between the analog and [digital] formats," observing that the City did not dispute the MPA's assertions that the digital recording "contains data not found on the analog version, namely[:] the digitized binary notations similar to those found on computer tapes," id. , ¶¶14, 19 n.9, and that with a digital copy, its expert "would be able to detect and enhance background voices, which would not be possible using only an analog copy," id. , ¶14. "Thus," we noted, "the MPA maintains, '[a]n analog *155 recording (such as that provided in this case) of a [digital] recording does not contain the same electronic 'signals' as the original [digital] recording.' " Id. , ¶19 n.9. We determined that the chief's production of the analog tape recording failed to satisfy the MPA's enhanced request because of the differences between the analog and digital formats and the fact that the nature of the original digital recording was such that it provided more information to the MPA's expert than the analog tape recording provided. Id. , ¶¶17-19 ; cf. Stone , 305 Wis. 2d 679, ¶18, 741 N.W.2d 774 ("If a 'copy' differs in some significant way for purposes of responding to an open records request, then it is not truly an identical copy, but instead a different record."). We concluded that the open records statute "allows for exactly what the MPA has requested-access to the source 'material' and the opportunity for 'examination and copying,' " and we held that the MPA was entitled to a digital copy of the original recording. Jones , 237 Wis. 2d 840, ¶¶17-19, 615 N.W.2d 190.
¶11 Similar to the digital versus analog "copy" of the original digital recording in Jones , in this case, it is undisputed that while electronic copies of the e-mails contain the same information as the e-mails themselves, the paper printouts from those e-mails are missing substantive information. It is undisputed, for example, that the electronic copies and the e-mails themselves, as received and stored on Krug's computer, contain "metadata," which information was not on the paper printouts from the e-mails.
¶12 By affidavit in this case, a Milwaukee Journal Sentinel reporter averred that electronic records include metadata "that show when documents were created and who created them," and that a paper printout from electronic records, unlike an electronic copy, results in a loss of "some information-such as *156 who used a computer or wrote an electronic document-that [reporters] would have no way of knowing." Similarly, the Attorney General's Wisconsin Public Records Law Compliance Guide recognizes that "[e]mail messages may contain transmission information in the original format that does not appear on a printed copy." Wisconsin Dep't of Justice, Wisconsin Public Records Law Compliance Guide 61 (Mar. 2018).
¶13 Through discovery, Krug provided Lueders a flash drive containing electronic copies of the e-mails Lueders sought in his July 21, 2016 enhanced request. Lueders' information technology expert reviewed those e-mails "using freely available email analysis tools, compared them to what a typical printout of an email looks like, and noted when data was only available via an electronic record." The expert averred that
*903 the electronic copies contain metadata and other information obtainable from a forensic evaluation of the email messages that would not be available from a printed document. "Metadata" generally means information about other data. In the email context, metadata is best understood as the email 'headers' that both provide a record of how an email traveled from the sender to the recipient, as well as data that is interpreted by client applications to display information. In Microsoft Outlook email files, this metadata would include headers that give detailed information regarding the sender, recipient, attachments, server locations, and other information. In the Microsoft Outlook email files from Mr. Krug, I found these items of metadata. For example, a short email from one constituent contained over 2,000 bytes of human-readable text, only 10% of which was text that would appear in a printed copy of the email message.
*157 ¶14 Referring to a paper printout from an e-mail on hand at the time of his deposition, the expert illustrated the difference between electronic copies of e-mails and paper printouts from those e-mails. The expert noted that the paper printout on hand
has a representation of metadata that's in a file at the top of it, From, Sent, To, Subject, Attachments. These are all things that are commonly understood when people read e-mails. However, there is significantly missing data.
By just looking at this piece of paper, in the first line it says, "From: Christa Westerberg." If I were to open this file up and look at it, I would actually be able to see not just what's called a friendly name, in other words, what the [e-mail] client [i.e., the program users open up on a day-to-day basis to read e-mails] shows, Christa Westerberg, I would also be able to see which e-mail address Christa sent that from. That can be relevant.
....
[M]ost e-mail clients allow you to view the entire header structure as well if you take a couple of extra clicks.
As indicated, the expert averred that the printouts from the e-mails in this case did "not contain the 'same information' as electronic copies of the same records."
¶15 The record makes clear that copying the e-mails onto a flash drive would have provided Lueders with a copy of the e-mails that contained all the information, including the metadata, that the original e-mails themselves contain; however, affording Lueders access to only the paper printouts did not. Thus, while affording Lueders access to the paper printouts *158 may have been a satisfactory response to his initial open records request,[2] it was not a satisfactory response to Lueders' subsequent, enhanced request for the e-mails in electronic form. We hold that Lueders is entitled to the e-mails in electronic form, just as the MPA was entitled to a digital, not just analog, copy of the original digital 911 recording in Jones .
¶16 WISCONSIN STAT. § 19.32(2) defines "record" as "any material on which written, drawn, printed, spoken, visual, or electromagnetic information or electronically generated or stored data is recorded or preserved, regardless of physical form or characteristics." (Emphasis added.) The term "record" "includes, but is not limited to, handwritten, typed, or printed pages, maps, charts, photographs, films, recordings, tapes, optical discs, and any other medium on which electronically generated or stored data is recorded or preserved." Id. (emphasis added). In Jones , we noted that "the material produced as a result of *904 the computer program" was the digital audio tape, and we held that that digital audio tape itself "is a separate record in addition to it being an audio tape." Jones , 237 Wis. 2d 840, ¶9, 615 N.W.2d 190 (emphasis added). The electronic e-mails here are substantively different in nature and content from the paper printouts from the e-mails. Because Lueders specifically requested copies of the "records in electronic form"-thereby indicating a clear desire to receive not just the content of an email that would be visible on a printout but the associated metadata as well-he is entitled to receive a copy of the e-mails in electronic form.[3] *159 ¶17 Krug cites to Grebner , 240 Wis. 2d 551, 624 N.W.2d 892, for his contention that under the second sentence of WIS. STAT. § 19.35(1)(b) "the authority, not the requester, decides the format in which copies of records are provided." Grebner does not help Krug.
¶18 As previously indicated, the second sentence of WIS. STAT. § 19.35(1)(b) does not apply because Lueders did not "appear personally" to request the electronic copies of the e-mails he sought. See supra ¶¶6-7. Moreover, the issue in Grebner was whether the clerk, who offered to make a copy of election poll lists for the requester, had the authority to deny the requester's in-person request to make a copy of the lists himself on a portable photocopy machine that he brought to the clerk's office. Grebner , 240 Wis. 2d 551, ¶¶3-4, 9, 624 N.W.2d 892. The clerk's concern, like our concern in reviewing the case on appeal, was that the poll lists not be damaged during the copying process. Id. , ¶¶6, 13.
¶19 Our decision in Grebner was based upon the means used to copy the records at issue-the record custodian, the clerk, copying the records with government equipment versus the requester copying the records with a personal, portable photocopy machine-and the potential risk of damage to the records by the means proposed by the requester. We did not address the format in which the records themselves would be provided to the requester, which is the issue before us in this case. Indeed, whether the clerk made copies of the poll lists on a government photocopier or allowed the requester to use his own photocopier to make the copies, the requester would receive the same thing-a paper copy of the records he sought. In the case now before us, Lueders' enhanced request *160 was for a copy of the e-mails in "electronic form," which was a request to receive a copy in a format fundamentally different from the paper printout format Krug made available to Lueders on July 19, 2016. Grebner is of no import to the case before us.
¶20 Notably, Krug did not refuse to provide the e-mails to Lueders in electronic form on the ground that they were protected from disclosure on some legal basis. No such reason was suggested. Rather, Krug effectively indicated that the paper printouts were "good enough" to satisfy Lueders' second, enhanced open records request. They were not.
¶21 Where a custodian "states insufficient reasons for denying access, then the writ of mandamus compelling disclosure must issue." Osborn v. Board of Regents of the Univ. of Wis. Sys. , 2002 WI 83, ¶16, 254 Wis. 2d 266, 647 N.W.2d 158. Here, Krug's stated reason for denying Lueders electronic copies of the e-mails-because Krug had previously afforded Lueders an opportunity to inspect and/or copy paper printouts from the e-mails-was insufficient, for the reasons we have *905 explained. Therefore, we affirm the circuit court's grant of the writ of mandamus.
By the Court. -Order affirmed.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Lueders makes no complaint about Krug's response to his initial open records request.

Krug acknowledges that "[e-]mails are 'records' within the meaning of Wis. Stat. § 19.32(2)." See also John K. MacIver Inst. for Pub. Policy, Inc. v. Erpenbach , 2014 WI App 49, ¶18, 354 Wis. 2d 61, 848 N.W.2d 862.